IN RE HANDLEY'S ESTATE.

CONSTITUTIONAL LAW — POLYGAMOUS CHILDREN — INHERITANCE— FINAL JUDGMENT—LEGISLATIVE POWERS.

1. Where the legislature of the state by statute declares that in all cases involving the right of polygamous children to inherit, determined against them before the act in any of the courts of the territory, a motion for a rehearing or new trial shall be entertained on their application who were parties at any time within one year after the act took effect, and the court is required to entertain the motion for a new trial or rehearing regardless of when the judgment or decree became final, the legislature assumed a control over the judiciary not warranted by the constitution, and such a statute, destroying vested rights and the finality of judicial determinations, is unconstitutional and void.

2. When the court construes the law, and holds that it has a certain effect, and bases its judgment upon it, the legislature cannot declare that the law as to that case has any other effect than that declared by the court.

(No. 94.   Decided June 28, 1897.)

On motion for rehearing.   For former opinion, see 24 Pac. 673.   *Denied.*

The suit was instituted a number of years ago by the plural wife and her children against the estate of Hand-

ley for a share of the property of the decedent. The probate court, the district court and the supreme court of Utah all decided the case adversely to contestants. An appeal was then taken to the supreme court of the United States, and the appeal was dismissed on jurisdictional grounds. (See *Chapman* v. *Handley,* 7 Utah 49; and *Chapman* v. *Handley,* 151 U. S. 443.)

At the time of Handley's death, May 25, 1874, there was among the statutes of Utah a law providing that illegitimate children and their mother inherit from the father. This is the law of 1852, which we have before mentioned. Also at that time the congressional anti-polygamy act of 1862, which annulled and vacated all laws of Utah which established or countenanced or encouraged polygamy, was in force. The sole question involved in the former decisions of the Utah courts in this case was whether or not the laws of congress of 1862 annulled the Utah law of 1852. The courts decided in this case that they did annul it.

In 1884, the legislature of Utah passed a law providing that every illegitimate child is an heir to the person who acknowledges himself to be its father, the same as if born in lawful wedlock. Comp. Laws § 2742.

Chapter 41 of the laws of 1896 provides that section 2742 of the Compiled Laws of Utah (originally enacted in 1884), included when enacted, and at all times thereafter, effectually operated to include the issue of bigamous and polygamous marriages, and entitles them to inherit and that in all cases where any court of Utah has decided adversely to such issue a motion for a new trial shall be entertained without prejudice from lapse of time.

*Sutherland & Murphy* and *J. W. Judd,* for petitioners.

Cited: *Converse* v. *Burrows,* 2 Minn. 191; *Sampeyreac* v.

*United States,* 7 Pet. 222; Cooley, Const. Lim. p. 461; *Ex parte McCardle,* 7 Wall. 506; *Cope* v. *Cope,* 137 U. S. 682; *Davis* v. *Ballard,* J. J. Marshal 572; *Alvord* v. *Little,* 16 Fla. 158; *Page et al.* v. *Matthew's Estate,* 40 Ala. 547; *Graves* v. *Graves,* (Ky.) 2 Bibb. 207; *Henderson & Nashville Ry.* v. *Dickinson,* 17 B. Mon. 173.

*Dey & Street* and *W. H. Bramel,* for respondent.

Cited: *People ex rel. Ins. Co.* v. *Jenkins,* 16 N. Y. 424; *Reiser* v. *William Tell Ass'n,* 39 Pa. St. 137; *Haley* v. *Philadelphia,* 68 Pa. St. 45; *Iron Works* v. *Oil Co.,* 1 L. R. A. 361; *Meyer* v. *Berlundi,* 1 L. R. A. 777; *Merrill* v. *Shelburne,* 8 Am. Dec. 52; *State* v. *Flint,* 63 N. W. 1113; *Page* v. *Multhias Estate,* 40 Ala. 547; 3 Enc. of Law, pp. 681-683 and notes; Suth. Stat. Const. secs. 480-482, 164; Cooley's Const. Lim. 361, 291; *Baggs Appeal,* 43 Pa. St. 512; *Atkinson* v. *Dunlap,* 53 Me. 111; *Moser* v. *White,* 29 Mich. 59; *Gilman* v. *Tucker,* 13 L. R. A. 304-310; *Hill* v. *Sunderland,* 3 Vt. 507; *Stamford* v. *Barry,* 15 Am. Dec. 691; *Ratcliffe* v. *Anderson,* 31 Am. R. 716; *Town of Stafford* v. *Sharon,* 17 Atl. R. 793; *State* v. *Flint,* 63 N. W. R. 1113; *Merrill* v. *Shellburne,* 8 Am. Dec. 52; *Taylor* v. *Root,* 4 Keyes 335, 344; *Gilman* v. *Tucker,* 13 L. R. A. 304-310.

ZANE, C. J.:

It appears from this record that the late George Handley was a resident of Salt Lake City; that he died on the 25th day of May, 1874, leaving a lawful wife, Elizabeth Handley, and a polygamous wife, Sarah A. Chapman, and the following children: John Handley, William Handley, Charles J. Handley, and Emma N. Handley, of the lawful marriage, and Ruth A. Newson, Benjamin T. Handley, Mary F. Handley, and Harvey F. Handley, of the plural marriage; that both wives and all of the chil-

dren except Mary Handley are still living; that he died seised of real estate estimated to be of the value of $25,916.92; that on April 12, 1888, his widow, Elizabeth Handley, was appointed administratrix of her husband's estate by the probate court; and that she filed an inventory and final account as such. It also appears that the surviving children of the plural wife, and their mother, as the heir of the deceased Mary, filed their petition in said court, asking that the children of the polygamous marriage be recognized as lawful heirs of their father, and that his estate be divided in equal parts among the children of both marriages. After hearing the evidence and proofs, the court made findings of fact and stated its conclusions of law to the effect that the petitioners were not entitled, under the law, to any part of the estate of the deceased father, and entered a decree accordingly, and for costs. It further appears that the petitioners appealed to the supreme court of the territory of Utah, and upon a hearing in that court the decision of the lower court was affirmed, with costs, on July 28, 1890, 7 Utah 49; that the petitioners then appealed to the supreme court of the United States, and the appeal was dismissed for the want of jurisdiction, and its mandate was sent down to the supreme court of the territory, and the latter issued its mittimus or mandate to the district court. After the lapse of six years from the expiration of the time within which a motion for a rehearing could be made under the rules of the supreme court of the territory or of this state, the legislature of the state of Utah passed the act in force March 9, 1896, in pursuance of which the petitioners present this motion for a rehearing. The statute is as follows:

"Section 1. That section 2742 of the Compiled Laws of the territory of Utah, included when enacted and

effectually operated at all times thereafter and now operates to include the issue of bigamous and polygamous marriages, and entitles all such issue to inherit, as in said section provided, except such as are not included in the provision in section 11, of the act of congress called the 'Edmunds-Tucker Act,' entitled 'An act to amend an act entitled "An act to amend section 5352" of the Revised Statutes of the United States, in reference to bigamy and for other purposes.'

"Sec. 2. That in all cases involving the rights of such issue to so inherit, heretofore determined adversely to such issue in any of the courts of the territory of Utah, a motion for a new trial or rehearing shall be entertained, on application of such issue who was or were parties at any time, within one year after this act shall take effect; and the case or cases in which said motion is so directed to be heard shall be deemed to be transferred to the courts of the state of Utah corresponding to that of the territory of Utah, in which such adverse decision was made, and the courts shall thereupon proceed to hear and determine said motion, and if granted to proceed to hear and determine said case or cases without prejudice from lapse of time since the former hearing or any prior determination of a like motion; provided, that this act shall not be construed to affect the rights of *bona fide* purchasers from any such parties before the approval of this act."

Handley, the ancestor, died in 1874,—10 years before section 2742 mentioned in the act became a law, and its meaning, operation, and effect declared by the act quoted. An act of the territorial legislature of March 3, 1852, was in force when the father and polygamous husband died. By that law the court determined the rights of the parties to his estate by the decree which the petitioners seek to

set aside. This decree gave the entire estate to the children of the lawful wife, and it became final after the time for filing a petition for rehearing had passed. If it were conceded that the right of the children of the plural wife to inherit a portion of their deceased father's estate should have been determined by section 2742, Comp. Laws, and the decree sought to be set aside had been rendered under it, section 1 of the act of March 9, 1896, could have no effect upon that decree, because it became final six years before that law took effect. After the court has interpreted or construed a statute on the trial of a case, and rendered judgment, the legislature cannot affect it by a declaratory or explanatory law, giving the law under which the decree was rendered a different construction. To hold that the legislature can, would recognize the lawmaking department as a court of errors, with power to overturn all judgments and decrees depending upon the interpretation or the construction of statutes. The purpose of separating and classifying the powers of government, and of intrusting the lawmaking power to the officers of one department and the right to execute laws to another, and the power to interpret and construe and apply laws to the conduct and contentions of mankind to another, was to prevent the evils that would arise if all were concentrated and held by the same hand. Such a concentration of power would give to the class of officers possessing it absolute power and that would amount to a despotism.

The second section of the act upon which the petitioners rely is subject to fatal objections. That section declares that in all cases involving the right of polygamous children to inherit, determined against them before the act in any of the courts of the territory, a motion for a new trial or rehearing shall be entertained on their appli-

cation, who were parties, at any time within one year after the act took effect. The court is required by it to entertain the motion for a new trial or rehearing regardless of when the judgment or decree became final. And the section further declares that such cases shall be deemed transferred from the territorial court to the state court. The state court is then directed to hear and determine the motion, and, if granted, to hear and determine the case without prejudice from the lapse of time since the former hearing, or any prior determination of a like motion. The court is peremptorily commanded by the legislature to entertain the motion for a new trial or rehearing upon the application of the polygamous issue, no matter what reasons may be brought to the attention of the court or may appear for not entertaining it. Though a final hearing may have been entered 25 years before, the motion must be entertained. If the right to inherit was decided against a polygamous issue, no matter for what reason, the legislature has decided the new trial must be entertained. The court is denied all discretion or right to judge for itself, as to its jurisdiction or otherwise. It is commanded to proceed at once, without first hearing any reasons or listening to any argument one way or the other. And, if a rehearing or new trial is granted, the court is directed to proceed to hear the case without prejudice from the lapse of time since the former hearing, or any prior determination, though the case may have been tried on such evidence, and a decree rendered a generation before. The court is forbidden by the act to take such matters into consideration, all laches and limitations must be disregarded. Under the territorial law the right to a new trial was lost unless the motion was served and filed with the clerk of the court within 10 days after the verdict, or, in case of a

trial by the court within 10 days after notice of its decision; and the same rule exists under the state. And a right to a rehearing in the supreme court under the territory was lost unless the petition was filed within 20 days after the decision, and this is also a rule of the supreme court of the state. According to this act, any number of years may have intervened. The act in question appears to be a plain attempt on the part of the legislature to exercise judicial powers. Section 1 of article 5 of the state constitution declares: "The powers of the government of the state of Utah shall be divided into three distinct departments, the legislative, the executive, and the judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the case herein expressly directed or permitted." Section 1 of article 8 of the same instrument is as follows: "The judicial powers of the state shall be vested in the senate, sitting as a court of impeachment, in a supreme court, in district courts, in justices of the peace, and such other courts inferior to the supreme court as may be established by law." The senate, while sitting as a court of impeachment, has judicial authority, so far as necessary, to try such issues. Otherwise the constitution has not intrusted any part of the judicial power of the state to the legislature. The petitioners claim that the provisions of the second section relate alone to the remedy. When the estate of the deceased, Handley, was ready for distribution, the four children of the lawful wife claimed all of it, while the four children of the plural marriage claimed the right to one-half of it. This made it the duty of the court to ascertain the heirs,—the persons entitled to inherit. The remedy provided by law was employed,

and the issue was tried, and upon the evidence heard, and the law as interpreted, construed, and applied to the facts, the court found the entire estate to belong to the four children of the lawful wife, and entered a decree accordingly. That decree was affirmed by the court of last resort, and it became final when the 20 days given within which to file a petition for a rehearing expired,—six years before the act of 1896 in question. That decree determined the interests of the children of the lawful wife to the estate in litigation, and gave them an immediate right to its possession. The remedy was exhausted, and the rights of the parties were established by that decree, and the title to the entire estate was vested in the four children of the lawful wife. The right was a vested one. It was finally ascertained and settled by the decree beyond the power of the court or the legislature to unsettle or divert it. The remedy which the law afforded the petitioners was employed by them, and it had completed its work. It was exhausted six years before the legislative enactment upon which they rely. After the decree became final, there remained no legal right to be enforced by the remedy which the act attempted to provide, or any legal wrong to be redressed. The legislature attempted by a retrospective act to furnish a method by which vested rights could be devested, and to compel the courts to employ it. The rights of the children of the lawful wife to the estate in question were ascertained and settled by the decree. Thereafter their rights were subject to no contingency. They were completed and consummated. They were vested, and beyond the reach of any remedy the court could employ or the legislature could invent. No retroactive, explanatory, or declaratory enactment thereafter could have any effect upon them. The court, having tried the case, construed the law in force

at the time; and, having applied it to the facts, and entered a final decree, the legislature could not afterwards, by a declaratory or explanatory act as to that case, give to the law a different construction, requiring a different decree, and invent a new remedy or change the old one, and require the court to retry the case and enter a new decree according to its new construction, and new and changed remedy.

If we were to affirm the validity of the law in question, we would, in effect, say that the legislature may exercise judicial powers, authorize and require the courts to set aside final judgments and decrees, divest titles, and destroy and annihilate vested rights. The people of the state have not intrusted such powers to the legislature. Cooley, Const. Lim. (6th ed.) p. 111; *Merrill* v. *Sherburne*, 8 Am. Dec. 52; *De Chastellux* ·v. *Fairchild*, 15 Pa. St. 18; *Reiser* v. *Association*, 39 Pa. St. 137; *Hooker* v. *Hooker*, 10 Smedes & M. 599; *Moser* v. *White*, 29 Mich. 58; *Gilman* v. *Tucker*, 128 N. Y. 190; *People* v. *Board of Sup'rs of New York*, 16 N. Y. 424. .

Judge Cooley (Const. Lim. p. 111) says: "It is always competent to change an existing law by a declaratory statute, and, where the statute is only to operate upon future cases, it is no objection to its validity that it assumes the law to have been in the past what it is now declared that it shall be in the future. But the legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form, since the legislature would, in effect, sit as a court of review, to which parties might appeal when dissatisfied with the rulings of the courts." In *Merrill* v.

*Sherburne*, 8 Am. Dec. 52, the plaintiff claimed the estate of Nathaniel Ward by virtue of an instrument purporting to be his last will, which the heirs at law of Ward contested, and after a hearing the issues were found against Merrill, and in 1814, at the November term of the court, final judgment was rendered, disallowing the instrument. Merrill then petitioned the legislature for another trial, and they, at their June session, 1817, passed an act granting to the plaintiff, as administratrix of Merrill, then deceased, liberty to re-enter the cause in the superior court, and there have it tried like a common case for review; and upon due notice the case was entered upon the docket, and the heirs, appearing as defendants, moved the court to quash the proceedings on the ground that the act was unconstitutional. The court held the nature and effect of the act was judicial, that it was also retroactive, and that the legislature had no power to pass such an act, and quashed the proceedings. In a very learned opinion the court said, among other things: "Be that as it may, however, it is clearly unwarrantable thus to take from any citizen a vested right, a right 'to do certain actions, or possess certain things,' which he has already begun to exercise, or to the exercise of which no obstacle exists in the present laws of the land.  *  *.  * But previous to the passage of the act granting a new trial to the plaintiff the defendant had become authorized by the laws of the land to possess all the estate of wh'ch Ward died seised. Every obstacle to the exercise of their rights had been removed or annulled; and whether their rights became vested by Ward's death, or by the final judgment in November, 1814, is immaterial, because both these events had happened before the passage of this act. *  *  * The defendants being thus situated, the legislature interfered; not to enact what is in its nature and

effect a law, but to pass a decree; not to prescribe a rule for future cases, but to regulate a case which had already occurred; not to make a private statute by the consent of all concerned, but, at the request of one party, to reverse and alter existing judgments; not to promulgate an ordinance for a whole class of rights in the community, but to make the action of a particular individual an exception to all standing laws on the subject in controversy. The expense and inconvenience of another trial were also imposed upon the defendants, and all their claims to the property in dispute, which had become indefeasible by the law then in being, were launched again upon the sea of litigation to be lost or saved, as accident and opinion might afterward happen to injure or befriend them. The misfortune of having vested rights thus disturbed is not small when we consider that on this principle no judgment whatever in a court of law is final."

In the case of *Gilman* v. *Tucker, supra,* the court said: "We also think the act violated the constitutional guaranty, because it assumes to nullify a final and unimpeachable judgment, not only establishing the plaintiff's right to the premises in dispute, but also awarding him a sum of money as costs. After rendition, this judgment became an evidence of title, and could not be taken from the plaintiff without destroying one of the instrumentalities by which her title was manifested. A statute which assumes to destroy or nullify a party's muniments of title is just as effective in depriving him of his property as one which bestows it directly upon another. * * * In the one case it despoils the owner directly, and in the other renders him defenseless against any assault upon his property. Authority which permits a party to be deprived of his property by indirection is as much within the meaning and spirit of the constitutional provision as

where it attempts to do the same thing directly. We are therefore of the opinion that the repugnancy between the law and the constitutional rights of the citizen is so irreconcilable that the law must fail."

The first section of the act of 1896 declared the operation and effect of section 2742 of the Compiled Laws of 1884, at the time it took effect, and at all times thereafter, included the issue of polygamous marriages, notwithstanding the court might have held in any given case it did not include such issue. The legislature assumed the right to declare the law had an operation and effect with respect to such cases, different from that which the court may have declared it had, and upon which it may have based its judgment. When the court construes the law, and holds it has a certain effect, and bases a judgment upon it, the legislature cannot declare that the law, as to that case, had any other effect than that declared by the court. By the second section of the act of 1896, the legislature decided and assumed that all judgments and decrees that had been entered involving the right of polygamous children to inherit were not final, and assumed to direct the courts to disregard their effect as such, and to entertain applications to set them aside, and assumed to command the state courts to deem such cases transferred, and to take jurisdiction of them, to proceed to hear and determine such applications, and, if granted, to hear and determine the cases regardless of limitations or laches. In effect, the courts are required to disregard as final all judgments and decisions rendered in such cases. We must hold the act of 1896 invalid, because in its passage the legislature assumed to exercise judicial powers, and also because they assumed the right to require the courts to regard judgments as impeachable that were unimpeachable under the laws in force at the time they

were rendered, and by which vested rights were established and evidenced.

MINER, J., and HART, D. J., concur.