## IN THE MATTER OF THE PETITION OF A. H. SIBLERUD AND OTHERS FOR A JUDICIAL DITCH AND LATERALS IN THE COUNTIES OF FREEBORN AND WASECA, DESIGNATED AND NUMBERED AS JUDICIAL DITCH NO. 2.
## WALLACE ARMSTRONG AND OTHERS, APPELLANTS.[1]

April 1, 1921.

No. 22,060.

**District court exercises judicial function in drainage proceedings.**

1. In carrying out and applying the drainage statutes, the district court exercises judicial functions, and its findings of fact and conclusions of law are to be given the same force and effect as in ordinary actions between private parties.

**New trial cannot be granted by legislature, when.**

2. The legislature has no power to grant a new trial or rehearing of a

[1] Reported in 182 N. W. 168.

cause after it has been heard and determined on the merits.    It lies wholly within the domain of the judiciary to do so by virtue of article 3, Minnesota State Constitution.

### Statute authorizing revival of drainage matter invalid.

3. A statute directing the district court to revive a drainage proceeding in which the petition for the establishment of the ditch has been denied on the merits and to hear and determine the matter de novo is invalid. Insofar as section 5, c. 471, Laws 1919, so directs, it is unconstitutional.

A. H. Siblerud and others petitioned the county board of Freeborn and Waseca counties for the construction of a certain ditch designated as Judicial Ditch No. 2, and the reports of the engineer and viewers thereon were approved by the board.    From the order establishing the ditch, Wallace Armstrong and others appealed to the district court for Freeborn county.    The appeal was heard by Catherwood, J., who made findings, reversing the order of the county board and dismissing the proceeding. When the matter came on for hearing de novo, objectors' motion to dismiss the proceeding was granted.    From the order of dismissal, Wallace Armstrong and others appealed.    Affirmed.

*John F. D. Meighen* and *Bennett O. Knudson,* for appellants.
*Norman E. Peterson* and *Moonan & Moonan,* for respondents.

LEES, C.

By an amendment to section 5532, G. S. 1913, contained in section 5, c. 471, p. 612, Laws 1919, the following addition was made thereto:

"Provided, however, that in event the final hearing on any ditch petition and the engineer's and viewers' reports came on to be heard before the county board or the judge of the district court, as the case may be, between April 6, 1917, and November 11, 1918, and an order was thereafter made refusing to establish said ditch, or dismissing the petition, that the said proceeding may be revived and the matter brought on for hearing de novo at any time within two years from the passage of this act by the following procedure:    A new petition and bond, as required by section 5525, General Statutes Minnesota 1913, as amended by chapter 441, section 4, General Laws of Minnesota for 1917, and referring to the engineer's and viewers' reports in the said proceeding and requesting that the said reports shall be brought on for hearing de novo shall first be

filed in the same office as the original petition and bond were filed, thereupon the board or court having jurisdiction in the first instance, shall be reinvested with jurisdiction in the matter the same as if the said proceeding had never been brought on for hearing and dismissed, and the said board or court shall thereafter, and within ten days after the filing of said petition, order notice of the final hearing to be given as provided by section 5531 of the General Statutes of Minnesota for 1913. At such final hearing the board or court, as the case may be, shall proceed to hear and determine said matter de novo."

In pursuance of this enactment a petition was filed for a rehearing of a drainage proceeding in the district court of Freeborn county. The proceeding had been begun in 1915, was finally heard in April, 1918, and determined November 2, 1918, by an order refusing to establish the proposed drainage system. After the order was filed, the court made specific findings of fact. The substance of the findings is that the land included in the drainage project is neither level nor swampy and does not require extensive drainage to make it useful for agriculture; the proposed drainage would change lands now used and valued as meadows and pastures into tillable fields; the public benefits would be of minor importance; the engineer's plans are unnecessarily elaborate and costly, and may and should be changed to reduce the expense materially; the plans provide for too many outlets for the water drained from the land; to construct them would burden the landowners with an expense greatly in excess of the benefits conferred; some of the assessments for benefits, as made by the viewers, should be entirely disallowed, and many others materially reduced; if the assessment of benefits and the award of damages are allowed to stand, it would be difficult, if not impossible, to finance the project, owing to the cost of labor and materials at the time the findings were made.

In a memorandum following the order of November 2, the court stated, as one of the reasons for the order, that to construct the drainage system the bonds of the counties involved would have to be issued for approximately $200,000 and would have to be sold in competition with government war securities, and that essential industries were then suffering from a shortage of labor, which might be aggravated if the drainage ditches were constructed; that these considerations of public policy,

though not controlling, had been taken into account among other reasons for denying the petition. It is probable that in enacting the amendment to section 5532, the legislature had in mind drainage proceedings which had been dismissed because it was contrary to the public interest to construct extensive improvements of that sort during the war period. We are not called upon to decide whether the statute is valid insofar as it applies to a proceeding where a petition was denied solely for that reason, for here the petition was denied on the merits.

In carrying out and applying the drainage statutes, the district court exercises judicial functions. State v. Crosby, 92 Minn. 176, 99 N. W. 636; State v. District Court of Norman County, 131 Minn. 43, 154 N. W. 617; State v. Flaherty, 140 Minn. 19, 167 N. W. 122.

Section 5532, G. S. 1913, directs the court to consider the reports of the engineer and viewers and such other evidence as may be adduced, and, if it finds therefrom that the estimated benefits are greater than the total cost, including damages awarded, that the work will be of public utility or benefit or will promote the public health and that the reports are complete, just and correct, it shall establish the proposed drainage system by an order containing such findings. Pursuant to the statute, the district court did consider the reports and evidence and then made its findings. We perceive no reason why these findings should not be given the same force and effect as findings of fact in an ordinary action between private parties. The only possible conclusion from the findings was that the petition should be denied. Now it is proposed to vacate the findings and conclusions, revive the proceeding after it has been conducted to a final determination and bring it on for hearing de novo.

This court has held that the legislature has no power to grant a new trial or rehearing of a cause after it has been heard and determined on the merits. State v. Flint, 61 Minn. 539, 63 N. W. 1113. The colonial legislatures exercised that power, following the English practice under which the House of Lords took cognizance of many suits at law and in equity. Calder v. Bull, 3 Dall. 381, 1 L. ed. 648; Merrill v. Sherburne, 1 N. H. 199, 8 Am. Dec. 52. But when the states adopted their constitutions, they separated the judicial from the legislative power and divided the government into three distinct departments, the legislative, the executive and the judicial, and generally declared that no one of the de-

partments should exercise any of the powers properly belonging to either of the others. Such is the constitutional provision in this state. Const. Minn. Art. 3. In states where the legislature had theretofore exercised the power to grant new trials, the adoption of a constitution containing such a provision was uniformly held to put an end to the power. It is generally agreed that to vacate a judgment or order which a court had authority to enter, involves the exercise of judicial power, and that legislative action cannot be made to retroact upon past controversies by compelling the courts to set aside their judgments or to grant new trials. Cooley, Const. Lim. (7th ed.) 136; 6 R. C. L. 163; 12 C. J. 831. The most instructive discussions of the principle and its application occur in the early cases. See Merrill v. Sherburne, supra; Lewis v. Webb, 3 Me. 326; De Chastellux v. Fairchild, 15 Pa. St. 18, 53 Am. Dec. 570; G. & D. Taylor & Co. v. R. S. & J. T. Place, 4 R. I. 324; Griffin's Exr. v. Cunningham, 20 Gratt. (Va.) 31.

Counsel for appellants recognize the principle, but question its application to the case at bar. They would confine its application to ordinary civil actions between private parties. They argue that a drainage proceeding is not an ordinary civil action in that no issues are framed by pleadings and there is no contest between private parties. They point to the fact that the exercise of the police power of the state is invoked and that a refusal to exercise it does not prevent an immediate renewal of the application for the establishment of the same drainage system. In this respect they say drainage proceedings are like proceedings to establish public highways.

All this is probably true, but nevertheless it falls short of overcoming the objection to the maintenance of the present proceeding. In passing, it should be noted that, if the amendment to section 5532 merely provides a way for the commencement anew of a drainage proceeding which has been dismissed, it has not provided a new remedy, for section 5562, G. S. 1913, had already covered that ground. The scope of the amendment is broader than that. The statute declares that the original proceeding shall be revived, heard and determined de novo after the dismissal of the petition originally filed or the entry of an order refusing to establish the ditch. It does not provide for the commencement of a new proceeding in which the reports of the engineer and viewers may be used

again. It directs that there shall be a rehearing of such reports. The court is required to act upon them "as if the said proceeding had never been brought on for hearing." Manifestly this would nullify the previous action of the court in the present case, overturn its findings and order, and compel it to traverse the same ground a second time, although the basis of the proceeding is the same, for the court would have before it and would be asked to approve of the same report from the engineer and viewers. True, the evidence produced at the second hearing might be different, but the ultimate questions to be decided would be the same, viz.: Should the ditch, as specified in the engineer's report. be established, and should the viewers' report be adopted and confirmed? They were judicial questions. Their decision involved the consideration of evidence and the determination of the facts established thereby. We think it is clear that the legislature has trenched upon the domain of the judiciary, but entertain no doubt that the line separating its authority from that of the judiciary was crossed inadvertently. We do not decide that the amendment to section 5532 is utterly void. As intimated at the outset, it may possibly be sustained insofar as it applies to proceedings which were dismissed without a hearing and determination on the merits. We only decide that where there has been such a hearing and determination the amendment cannot be given effect.

Order-affirmed.