PARAMINO LUMBER CO. ET AL. *v.* MARSHALL, DEPUTY COMMISSIONER, ET AL.

No. 271. Argued January 30, 1940.—Decided March 11, 1940.

*Mr. Stanley B. Long,* with whom *Mr. Edward G. Dobrin* was on the brief, for appellants.

*Mr. Oscar A. Zabel,* with whom *Mr. Edwin J. Brown, Sr.* was on the brief, for John T. Clark, appellee. *Solicitor General Biddle* was on a memorandum for Wm. A. Marshall, appellee.

MR. JUSTICE REED delivered the opinion of the Court.

The question is whether the due process clause of the Fifth Amendment is violated by a private act of Congress directing a review of an order for compensation under the Longshoremen's and Harbor Workers' Compensation Act[1] after there had been a final award by the deputy commissioner and after the time for review of the award had expired.

On January 17, 1931, the appellee Clark fell and fractured a rib while working on the navigable waters of the United States as a longshoreman for the appellant Paramino Lumber Company. The other appellant, the Union Insurance Company of Canton, Ltd., is the in-

---

[1] 33 U. S. C. §§ 901–50.

surance carrier of the Lumber Company under the Compensation Act. The fall having disabled Clark, the appellants voluntarily paid him compensation. Then, on Clark's application, hearings were had under the Compensation Act which resulted in a determination on August 26, 1931, by the deputy commissioner that Clark had been wholly disabled from the date of his fall to July 4, 1931, that on the latter date he had recovered from the disability, and that he had been paid by appellants all the compensation due him. No proceedings being brought to review this award, it became final in thirty days.[2] Almost five years later, the Congress passed a private act ordering the Compensation Commission to review Clark's case and to issue a new order, the provisions in the Compensation Act limiting time for reviewing awards "to the contrary notwithstanding."[3] The information which led the House and Senate Committees on Claims to recommend passage of the act[4] indicated that

[2] 44 Stat. 1436, § 21; 33 U. S. C., § 921.

[3] 49 Stat., pt. 2, p. 2244. The act in full reads:

"That in the case of John T. Clark, of Seattle, Washington, whose disability compensation under the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, was terminated as of July 5, 1931, by a compensation order filed August 26, 1931, the Employees' Compensation Commission be, and it is hereby, authorized and directed to review such order in accordance with the procedure prescribed in respect of such claims in section 19 of said Act, and in accordance with such section to issue a new compensation order which may terminate, continue, increase, or decrease such compensation, the provisions of sections 21 and 22 of the said Act, as amended, to the contrary notwithstanding: *Provided,* That such new order shall not affect any compensation paid under authority of the prior order."

[4] S. Rep. No. 1645, 74th Cong., 2d Sess.; H. R. Rep. No. 1892, 74th Cong., 1st Sess. The information before the Committees is attached to both reports and includes statements by the doctors who examined, X-rayed, and operated on Clark after the deputy commissioner's order; letters from the Compensation Commission

Clark had first been treated by his employer's physician who operated on his twelfth rib and reported that an examination of the eleventh rib showed a firm union at the site of the fracture of that rib. On the basis of this report the deputy commissioner concluded that Clark had recovered and terminated his compensation. But Clark's pain continued, and within four months of the deputy commissioner's order X-rays taken by other physicians disclosed that the fracture of the eleventh rib was ununited, and in order to give Clark relief an operation fusing the bone fragments had to be performed. After this the rib healed, but in March, 1935, the physician who performed the second operation reported that Clark was still experiencing pain in the region of his injury. Since the deputy commissioner had no jurisdiction over the case after he made his order, and since the time for judicial review expired prior to the time of the operation on the eleventh rib, Clark had no opportunity under the act to have his compensation readjusted.[5]

After an unsuccessful attempt by appellants to enjoin a hearing under the private act,[6] a hearing was had and

discussing the history of the case; and a letter from the deputy commissioner to the sponsor of the act, Congressman Zioncheck, relating the deputy commissioner's participation in the case.

[5] See note 2 *supra*. Section 22 of the Compensation Act (33 U. S. C. § 922), allowing the deputy commissioner to issue an amended award "on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner," was not available to Clark because at the time of his discovery of his continued disability the deputy commissioner could only take such action "during the term of an award." 44 Stat. 1437. On May 26, 1934, the section was amended (48 Stat. 807) to allow new awards because of changed conditions to be made "at any time prior to one year after the date of the last payment of compensation." Had this been in force at the time of Clark's injury, presumably it would have afforded him a remedy for a new award, but when it was passed more than a year had expired from the last payment of compensation.

[6] 95 F. 2d 203.

the deputy commissioner issued a new award granting Clark compensation for total disability from the date of the prior award, July 4, 1931, to January 5, 1939. Appellants brought two actions against Clark and the deputy commissioner seeking injunctions against the operation of the private act through prohibition of any further steps under the new award. The first bill was framed as an independent suit in equity; the second sought relief under the section of the Compensation Act providing for "injunction preceedings" to review awards made under the Act.[7] Under the Act of August 24, 1937,[8] a three-judge court was convened and the Attorney General duly notified. The causes having been transferred to the admiralty side of the court and consolidated for all purposes, the appellees filed exceptions claiming that the appellants had failed to state a cause of action. The court upheld the validity of the special act and sustained the appellee's exceptions.[9]

By direct appeal the appellants challenge the decree below, contending that the private act violates the due process clause of the Fifth Amendment. The argument of appellants is that the original award was an adjudication on which further review was barred prior to the enactment of the private act; that thereby rights and obligations were finally determined, the deprivation of which took from appellants a substantive immunity from further claims of Clark and created in Clark new substantive rights.

An award under the Longshoremen's and Harbor Workers' Compensation Act determines the liability of

---

[7] 44 Stat. 1436, § 21; 33 U. S. C. § 921.

[8] 50 Stat. 752, § 3; 28 U. S. C. § 380a.

[9] *Paramino Lumber Co.* v. *Marshall*, 27 F. Supp. 823; discussed in Comment, The Constitutionality of Private Acts of Congress (1940) 49 Yale L. J. 712.

employer to employee.[10]   But we do not agree that the immunity obtained by the lapse of the time for review is the type of immunity which protects its beneficiary from retroactive legislation authorizing review of the claim.   This private act does not set aside a judgment, create a new right of action or direct the entry of an award.   The hearing provided for is subject to the provisions of the general act for longshoremen's and harbor workers' compensation.   It does not operate to create new obligations where none existed before.   It is an act to cure a defect in administration developed in the handling of a compensable claim.   If the continuing injury had been known during the period of compensation, payments of the same amount due under the award authorized by this act would have been due to the employee.[11]   In such circumstances we see no violation of the due process clause.

The principle underlying this conclusion is illustrated by *Graham & Foster* v. *Goodcell*.[12]   There a retroactive act of the Congress barred recovery by taxpayers of payments for taxes, properly owing but collection of which was barred by limitation.   At the time of the enactment of the controverted statute, the taxpayer had a right to recover the payment.   Limitation had been permitted to run in favor of the taxpayer under a mistake of law. This Court upheld the legislation as consistent with due process on the ground that it was a curative act to remedy mistakes in administration where the remedy "can be applied without injustice."[13]

---

[10] *Crowell* v. *Benson*, 285 U. S. 22.

[11] See note 5, *supra*.

[12] 282 U. S. 409.

[13] See the cases cited to support the conclusion: *Forbes Boat Line* v. *Board of Comm'rs*, 258 U. S. 338; *United States* v. *Heinszen & Co.*, 206 U. S. 370; *Tiaco* v. *Forbes*, 228 U. S. 549; see also *Swayne & Hoyt, Ltd.* v. *United States*, 300 U. S. 297, 302.

Rights obtained by an attaching creditor were subjected to the equity of a prior mortgage, invalid because improperly recorded, by a subsequent act in *McFaddin* v. *Evans-Snider-Buel Company*.[14] This Court refused to accept the argument that such a retroactive statute deprived the holder of the attachment lien, with notice of the prior equity, of property without due process.[15] Even more recently in *Carpenter* v. *Wabash Railway Company*,[16] we upheld as valid and applicable an act granting priority to railroad employees for damages for personal injuries over other claimants in equity receiverships. The act there in question was passed while certiorari was pending in this Court from a contrary decision upon priority which we assumed to be correct. This ruling resulted from the "superior equities" of the employees.[17]

It is unimportant whether the claim persisted after the bar[18] or ended with the running of limitation.[19] To cure a fault of administration Congress may validly enact this act.

It is urged by appellant, however, that the equal protection clause of the Fourteenth Amendment should be

---

[14] 185 U. S. 505, 511.

[15] See *Independent Pier Co.* v. *Norton*, 12 F. Supp. 974, where the amendment of May 26, 1934, 33 U. S. C. § 922, construed as extending the time for review of an award under Longshoremen's and Harbor Workers' Compensation Act for one year retroactively as to a final award, was held within due process. See also *Pennsylvania* v. *Wheeling & Belmont Bridge Co.*, 18 How. 421.

[16] *Ante*, p. 23.

[17] Cf. *Danforth* v. *Groton Water Co.*, 178 Mass. 472; 59 N. E. 1033; *Dunbar* v. *Boston & Providence Railroad*, 181 Mass. 383, 386; 63 N. E. 916; *Robinson* v. *Robins Dry Dock & Repair Co.*, 238 N. Y. 271; 144 N. E. 579. But see for criticism *Woodward* v. *Central Vermont Ry. Co.*, 180 Mass. 599, 603; 62 N. E. 1051; *Ziccardi's Case*, 287 Mass. 588, 591; 192 N. E. 29; *Casieri's Case*, 286 Mass. 50; 190 N. E. 118.

[18] *Campbell* v. *Holt*, 115 U. S. 620.

[19] *William Danzer Co.* v. *Gulf & S. I. R. Co.*, 268 U. S. 633.

read into the due process clause of the Fifth Amendment. If so read, it is argued, this private act violates the rule of equal protection. This conclusion, however, we find untenable. Private acts, as such, are not forbidden by the Constitution. That instrument contains no provision against private acts enacted by the federal government except for a prohibition of bills of attainder and grants of nobility.[20] It took an act of Congress to outlaw them in the territories,[21] even though the Fifth Amendment is applicable to the territories.[22] The states have different situations as to the validity of private acts.[23] The constitutions of many of the states, unlike the federal, forbid private legislation without regard to the Fourteenth Amendment of the Constitution of the United States.[24]

---

[20] Art. I, § 9, cls. 3 and 8.

[21] 24 Stat. 170; cf. *Maynard* v. *Hill*, 125 U. S. 190.

[22] *Farrington* v. *Tokushige*, 273 U. S. 284, 299.

[23] State courts have dealt with this question as a matter of the necessity of equality in due process before and after the passage of the Fourteenth Amendment. *Holden* v. *James,* 11 Mass. 396; *State* v. *Industrial Accident Board,* 94 Mont. 386; 23 P. 2d 253; *Matter of Decker* v. *Pouvailsmith Corp.,* 252 N. Y. 1, 7; 168 N. E. 442; *Roles Shingle Co.* v. *Bergerson,* 142 Ore. 131; 19 P. 2d 94; *Reiser* v. *William Tell Saving Fund Assn.,* 39 Pa. 137, 146; *State Bank* v. *Cooper,* 2 Yerg. (Tenn.) 599, 605, 606; *Tate's Executors* v. *Bell,* 4 Yerg. (Tenn.) 202; *Fisher's Negroes* v. *Dabbs,* 6 Yerg. (Tenn.) 119; cf. 2 Cooley, Constitutional Limitations (8th ed.) 809.

[24] There are restrictions against the enactment of special legislation in the constitutions of all the states except Connecticut, Massachusetts, New Hampshire and Vermont. The following are typical provisions: (1) "The legislature shall not pass local or special laws concerning any of the following enumerated cases, . . ."; followed by an enumeration of proscribed subjects which is concluded with the catchall, "where a general law can be made applicable." See

Nor can we say that this legislation is an excursion of the Congress into the judicial function.[25]

*Affirmed.*

MR. JUSTICE MCREYNOLDS dissents.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

Cal. Const., art. IV, § 25; Ky. Const., § 59. (2) "All laws, of a general nature, shall have a uniform operation throughout the State. . . ." See Ohio Const., art. II, § 26. (3) "No special, private, or local law . . . shall be enacted in any case which is provided for by a general law. . . ." See Ala. Const., art. IV, § 105. (4) "The legislature shall have no power to suspend any general law for the benefit of any particular individual. . . ." See Tenn. Const., art. XI, § 8. Often there will be more than one provision in a constitution. The various provisions and decisions under them are discussed in Cloe and Marcus, Special and Local Legislation (1936) 24 Ky. L. J. 351, and Binney, Restrictions Upon Local and Special Legislation, p. 127, *et seq.*

[25] *Johannessen* v. *United States*, 225 U. S. 227, 241.

The state cases cited by appellants upon the question of the invasion of judicial authority involve statutes affecting judicial judgments rather than administrative orders and are therefore inapplicable:

*Sanders* v. *Cabaniss*, 43 Ala. 173; *Trustees Fund* v. *Bailey*, 10 Fla. 238; *Dorsey* v. *Dorsey*, 37 Md. 64; *State ex rel. Flint* v. *Flint;* 61 Minn. 539; 63 N. W. 1113; *Petition of Siblerud*, 148 Minn. 347; 182 N. W. 168; *Merrill* v. *Sherburne*, 1 N. H. 199; *Matter of Greene*, 166 N. Y. 485; 60 N. E. 183; *De Chastellux* v. *Fairchild*, 15 Pa. 18; *Taylor & Co.* v. *Place*, 4 R. I. 324; *In re Handley's Estate*, 15 Utah 212; 49 P. 829; *Ratcliffe* v. *Anderson*, 31 Gratt. 105 (Va.); *Marpole* v. *Cather's Adm'r*, 78 Va. 239; *Davis* v. *Menasha*, 21 Wis. 491.

Compare *Jones* v. *Mehan*, 175 U. S. 1; *Pennsylvania* v. *Wheeling & Belmont Bridge Co.*, 18 How. 421; *Pocono Pines Assembly Hotels Co.* v. *United States*, 73 Ct. Cls. 447.