MORRIS COHEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20869. Promulgated September 22, 1950.

*Ronald Shankland, Esq.,* and *James J. Waters, Esq.,* for the petitioner.

*William B. Springer, Esq.,* for the respondent.

266

268

**OPINION.**

HILL, *Judge:* A trust instrument executed by petitioner on February 21, 1944, states in effect that petitioner thereby transfers to himself as trustee, (a) his entire right, title and interest in the agreement then existing between Interstate and himself relative to Design Patent No. 136,653, and Patent Applications. Serial Nos. 429,764 and 441,580, and (b) his entire right, title and interest in the supplementary agreement dated February 15, 1944, between Naf-

ziger, Sticelber and himself. The entire income reported by the Morris Cohen Trust in 1944, 1945 and 1946 with the exception of $185 in dividends is attributable to these trust assets. Petitioner contends that none of the trust income in these three years is taxable to him individually because this income is attributable to income-producing property he irrevocably transferred to the trust. Respondent argues, first. that the entire net income of the trust in each of these years is taxable to petitioner, with the exception of the dividends, on the ground that petitioner merely made an assignment to himself as trustee of future income he was entitled to receive. In the alternative respondent invokes the doctrine of *Helvering* v. *Clifford*. 309 U. S. 331, and contends that the entire net income of the trust during the years 1944–1946 is taxable to petitioner as settlor-trustee.

Three principal questions arise for our determination in this proceeding:

(1) Did petitioner's transfer to himself as trustee of his entire interest in the agreement between Interstate and himself constitute an assignment of his right to future compensation for past services rendered by him to Interstate, or an assignment of his entire interest in a royalty agreement with Interstate?

(2) Was petitioner's transfer to himself as trustee of his entire interest in the supplementary agreement of February 15. 1944, between Sticelber, Nafziger, and himself an assignment of his right to future compensation for past services rendered by him to Sticelber, an assignment of future income from his one-third equity in the license granted to Sticelber by Interstate or an assignment of his equitable interest in the license itself?

(3) Did petitioner retain such a "bundle of rights" in the Morris Cohen Trust that the entire income thereof was taxable to him under the *Clifford* doctrine?

Turning first to the transfer by petitioner to himself as trustee of his interest in the agreement existing between Interstate and himself, we think that this constituted an assignment of future income derived from personal services of petitioner and thus the payments received by the trust in 1944, 1945, and 1946 attributable to this assignment are taxable to him under section 22 (a). The employer-employee agreement between Interstate and petitioner provides in substance that all improvements. inventions. and discoveries made by petitioner while in the employ of Interstate or within one year thereafter shall become the property of Interstate. It further provides that Interstate will pay to petitioner a sum equal to one-half of the net profits, if any, received by Interstate from persons or corporations, other than Interstate or its subsidiaries. in connection with the exploitation of any of the inventions or improvements. This was in addition to petitioner's salary as engineer. Prior to the execution of the trust instru-

ment petitioner assigned to Interstate his entire interest in Design Patent No. 136,653, and Patent Applications, Serial Nos. 429,764 and 441,580. It is clear that on February 21, 1944, the only interest petitioner had under the agreement with Interstate relative to the aforesaid patent and patent applications was a contract right to receive a percentage of any net profits from their exploitation by an outside company. It constituted simply a right to additional compensation for past services rendered. *Arthur N. Blum*, 11 T. C. 101, affd., 183 Fed. (2d) 281. We find no merit in petitioner's argument that the employer-employee agreement was in the nature of a royalty agreement.

It follows that the assignment by petitioner of his rights under the agreement with Interstate to the trust, being but an assignment of a contract right to future compensation for past services, is an assignment of future income rather than of income-producing property. *Helvering* v. *Eubank*, 311 U. S. 122, and *Strauss* v. *Commissioner*, 168 Fed. (2d) 441, certiorari denied, 335 U. S. 858. To paraphrase the language of the latter case, pages 442, 443, petitioner's interest in the patent and patent applications was never greater than a contract right to be paid certain ascertainable sums of money. From first to last his pay for his services was to be only in money determinable in amount by reference to such royalty agreements covering the patent and patent applications as Interstate made with other companies. Since compensation derived from past personal services is taxable to the one who performed the services whether or not he actually receives the compensation or transfers the right to receive it before it is paid, we hold that the payments received by the Morris Cohen Trust from Interstate in 1944, 1945, and 1946 are taxable to petitioner.

Turning to the second question, respondent's position is that the transfer by petitioner to himself as trustee of his entire interest in the supplementary agreement of February 15, 1944, between Sticelber, Nafziger, and himself constituted an assignment of his right to compensation for past services he had rendered Sticelber, and consequently payments by Sticelber to the Morris Cohen Trust in 1944, 1945, and 1946 were taxable to petitioner under the rationale of *Helvering* v. *Eubank*, *supra*, and *Strauss* v. *Commissioner*, *supra*. If it be held that petitioner had a one-third equitable interest in the license granted by Interstate to Sticelber, then respondent asserts that the transfer by petitioner to the trust of his interest in the supplementary agreement of February 15, 1944, amounted to an assignment merely of his future right to income from his equity in the license, and as a result the payments by Sticelber to the trust were taxable income to petitioner under *Helvering* v. *Horst*, 311 U. S. 112. On the other hand, it is petitioner's contention that he owned a one-

third equitable interest in the license granted to Sticelber by Interstate, and his transfer to himself as trustee of his interest in the supplementary agreement constituted an assignment of income-producing property in the form of his equitable interest in the license so that the payments by Sticelber to the trust were not taxable to him. He relies on the rationale of *Blair* v. *Commissioner*, 300 U. S. 5. We think petitioner's contention is correct.

A joint venture has often been defined as a "special combination of two or more persons, where, in some specific venture, a profit is jointly sought without an actual partnership or corporate designation." *Tompkins* v. *Commissioner*, 97 Fed. (2d) 396; *Aiken Mills, Inc.*, v. *United States*, 144 Fed. (2d) 23, and *Estate of L. O. Koen*, 14 T. C. 1406. The terms of such a venture may be informal and need not be reduced to writing. *Tompkins* v. *Commissioner, supra*, and *Denny* v. *Guyton*, 327 Mo. 1030, 40 S. W. (2d) 562. Furthermore, the rights of co-adventurers in property acquired or used in connection with the joint enterprise depend primarily upon the agreement of the parties. *Dierks & Sons Lumber Co.* v. *Bruce*, 239 S. W. 133. Guided by these legal concepts we are convinced from a review of all the evidence that Sticelber, Nafziger, and petitioner exploited the license from Interstate as a joint venture, though they never formally labeled it as such, and that prior to the execution of the trust instrument petitioner owned a one-third equitable interest therein. Inherent in this conclusion is our rejection of respondent's view that the payments made by Sticelber to the trust were compensation for past services rendered by petitioner.

The testimony of Sticelber and petitioner makes clear the terms of the oral agreement reached by them and Nafziger in January 1944. They agreed that Nafziger and petitioner would obtain a license from Interstate for Sticelber to manufacture and sell the Nafziger Dough Process Machine, and that each should own a third interest in such license and share equally in the profits from its exploitation. The absence of an express agreement to share in losses is not material, since such an agreement may be implied from their agreement to share profits. *Denny* v. *Guyton, supra*. It is true that Interstate issued the license to Sticelber alone, but this was done only because Nafziger and petitioner were employees of Interstate. Sticelber himself admitted that all three of them had equal interests therein. Even though title was taken in the name of one of the co-adventurers, this did not destroy the rights of the other two therein. The effect of their property agreement was that Sticelber held legal title to the license as trustee for all of them. *Dierks & Sons Lumber Co.* v. *Bruce, supra*. Petitioner could have specifically enforced his one-third equitable interest in the license at any time.

The written supplementary agreement of the parties on February 15, 1944, providing for distribution of one-third of the net profits from the manufacture and sale of machines under the license, lends further support to the view that the enterprise was a joint venture whereby each of the trio owned a one-third equity in the license. It states that for the past 15 years Nafziger, Sticelber and petitioner have been working closely together on patents and inventions for the baking business, Nafziger furnishing cash, Sticelber time and money, and petitioner time and engineering experience. That the agreement provided the books of the venture were open to inspection by Nafziger and petitioner and they had a voice in determining the time for distribution of profits also suggests a joint venture. The agreement significantly states only that the license had been taken in the name of Sticelber. No reference is made to compensation or commissions but rather to equal sharing in net profits as previously agreed. Thus in the absence of profits Nafziger and petitioner would receive no payment.

That the trio were co-adventurers in the exploitation of the license is also borne out by the minutes of the special meeting of the board of directors of Interstate on December 11 and 12, 1944. At this meeting Nafziger stated that the manufacture and marketing of the Nafziger Dough Process Machine was a joint undertaking in which he had a one-third interest with Sticelber.

It is clear from the record that the word "commissions" both in the journal and ledger book of the Sticelber venture in reference to payments to the Morris Cohen Trust was a misnomer and that actually the amounts paid to the trust were not deducted in computing net profits. Respondent's contention is further rebutted by Sticelber's testimony that these payments were due to the interest in the license rather than to compensation for services rendered by petitioner.

Testimony of Sticelber and petitioner that had the license been sold the payment would have been split three ways also lends credence to the view that each of the co-adventurers had an equal equitable interest therein.

Having determined that exploitation of the license was a joint venture between Sticelber, Nafziger, and petitioner whereby petitioner had a one-third equitable interest in the license, we next pass to the problem whether the transfer by petitioner to himself as trustee of his entire interest in the supplementary agreement amounted in substance to an assignment of income-producing property in the form of his equity in the license or to an assignment merely of future income therefrom. The law is clear that where a taxpayer merely assigns his right to future income on property he retains, he is taxable thereon, whereas if he assigns all his interest in the income-producing prop-

erty, he escapes taxation on the future income which it produces. *Blair* v. *Commissioner, supra; Harrison* v. *Schaffner,* 312 U. S. 579; and *Helvering* v. *Horst, supra.*

If we were bound by the strict language of the trust instrument alone, our conclusion could only be that petitioner assigned his right to share in future profits from the license while retaining his own interest therein. It does not mention petitioner's interest in the license but assigns his interest in a supplementary agreement which provides solely for the distribution of profits from the manufacture and sale of the Nafziger Dough Process Machine. But in tax matters the rule is well established that we must look beyond the terms of a written instrument to the real transaction and examine all evidence explaining its true nature. *Helvering* v. *F. & R. Lazarus & Co.,* 308 U. S. 252; *Tex-Penn Oil Co.* v. *Commissioner,* 83 Fed. (2d) 518.

In determining the true intent of petitioner in making this assignment to the trust, we find special significance in petitioner's statement he attached to his Federal gift tax return filed a year thereafter. He sets forth the assignment under consideration in the following language:

Donor has transferred to Morris Cohen, Trustee, all of donor's right, title and interest in and to Patent license granted by Interstate Bakeries to Merlin A. Sticelber, Scarritt Building, Kansas City, Missouri, (donor's interest in said license being one-third thereof), * * *

We also have given due weight to petitioner's testimony that if the proposed sale of the license had become a reality, he would have received one-third of the sale price as trustee rather than in his individual capacity. We have not been impressed with certain testimony seemingly contradictory to this, for it is apparent therein that no distinction was being made between petitioner as trustee and as an individual. Other evidence alluded to by petitioner and respondent in support of their respective interpretations of petitioner's language of assignment in the trust instrument is too vague and inconclusive to be of any real help.

Despite the paucity of reliable evidence we feel certain that it was not petitioner's intent in creating the trust to assign anything less than his entire interest in the license. Therefore, under established principles, we hold that having made a transfer of his income-producing property, petitioner is not taxable on the payments by Sticelber to the trust in 1944, 1945, and 1946 arising from this property.

Passing to the final question, respondent contends in the alternative that the entire net income of the Morris Cohen Trust for the taxable years 1944, 1945, and 1946 was taxable to petitioner as settlor-trustee under section 22 (a) by virtue of the doctrine of *Helvering* v. *Clifford, supra.* He points out that the declaration of trust authorized peti-

tioner to withhold from distribution to the trust beneficiaries such amounts of trust income as he in his sole discretion might deem necessary to protect the trust properties. Furthermore he notes that the trust instrument provided for the distribution, on termination of the trust, of the trust corpus, including accumulated income, to the heirs-at-law of the surviving trust beneficiary. Thus he asserts that petitioner as trustee might withhold income and distribute such accumulated income to remaindermen who might not be, so far as some of the accumulated income is concerned, the heirs of the trust beneficiary from whom the trust income had been withheld. Respondent concludes that this power in the settlor-trustee to accumulate income in favor of remaindermen against a life beneficiary constitutes a power retained by petitioner over the disposition of the trust income, which, when combined with the fact the beneficiaries were members of his family and the trust instrument granted petitioner broad powers of management over the trust properties, renders petitioner taxable on the entire net income of the trust. In support of his argument respondent chiefly relies on *Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491, certiorari denied, 326 U. S. 719.

The basic question, whenever the *Clifford* case is invoked to tax trust income to the settlor-trustee under section 22 (a), is whether the "bundle of rights" vested in the taxpayer by the trust instrument is so substantial as to be equivalent in substance to a retention of economic ownership of the trust property. In the instant case after careful analysis of the terms of the trust and all the circumstances attendant upon its creation and operation, we are convinced that petitioner did not retain such control over the properties transferred to the Morris Cohen Trust as to render him taxable on the income therefrom under section 22 (a) in 1944, 1945, or 1946. It is clear from the terms of the trust instrument and petitioner's conduct during the taxable years that he had neither the power to nor attempted to revoke the trust, alter or amend its terms, avail himself of the income or change the beneficiaries. Furthermore, the duration of the trust was not short term but for the lives of the two beneficiaries. The reversionary interest of the grantor in the trust corpus was so remote as to be virtually non-existent. Thus the only tenable basis for taxing the trust income to petitioner lies in the two facts emphasized by respondent, that is, the settlor-trustee was granted broad powers of management over the trust income and was given discretion whether to distribute or withhold trust income to the beneficiaries.

It is true that in the *Stockstrom* case, *supra*, the Court laid great emphasis upon the combination of these two powers in a grantor-trustee. Nevertheless, close examination of the facts of the *Stockstrom* case and the instant one reveals such fundamental differences

that we do not regard that case as controlling the present issue. In the *Stockstrom* case, the settlor-trustee had an absolute, uncontrolled discretion to accumulate or distribute income. The trust instrument did not specify any regular time for the distribution of income, nor the proportions thereof to be received by each beneficiary. As a practical matter he more than once withheld all income from certain beneficiaries during the years under consideration. In the present case the trust indenture specifically provides that the entire net income is to be distributed to the two life beneficiaries no less than quarterly and enumerates the percentage thereof to be turned over to each. Discretion to withhold the income is strictly limited to occasions when protection of the trust property requires it. Thus the trust provisions set a definite standard of necessity by which to judge the exercise of this discretion by petitioner so that a court of equity to which petitioner was subject as trustee could readily determine whether the discretion was abused. The evidence makes it clear that at no time subsequent to the formation of the trust has petitioner made an attempt to accumulate income in favor of remaindermen in abuse of his discretion. This discretion was designed to protect the trust estate for the benefit of the two life beneficiaries, and a court of equity would protect their rights. It was not and could not be exercised as petitioner saw fit. See *L. M. Fischer*, 14 T. C. 792.

Furthermore, the taxpayer in the *Stockstrom* case possessed other excessively broad powers not granted to petitioner in the instant case, including the right to deal with trust corpus as if he were the individual owner thereof, to hold the trust assets without divulging the trusts and to retain possession of the trust properties, removing them to any place he chose. Thus the "bundle of rights" retained by petitioner in the instant case is in nowise comparable with that retained by Stockstrom.

We therefore hold that under the circumstances of this case the fact that petitioner as settlor-trustee had broad powers of management and limited discretion as to the distribution of income did not render the trust income taxable to him under section 22 (a). See *Alex McCutchin*, 4 T. C. 1242, affd., 159 Fed. (2d) 472.

There must be a recomputation of petitioner's deficiencies under Rule 50 in accordance with the holding we have made. In such proceedings the medical expense deduction of petitioner for 1946 can be determined.

Reviewed by the Court.

*Decision will be entered under Rule 50.*