BOWLES, Adm'r., Office of Price Administration, et al. v. LEE'S ICE CREAM, Inc., et al.

No. 8924.

United States Court of Appeals
District of Columbia.

Argued Feb. 1, 1945.

Decided Feb. 23, 1945.

Mr. David London, Chief, Appellate Branch, Office of Price Administration, of Washington, D. C., with whom Messrs. Fleming James, Jr., Director, Litigation Division, O. P. A., A. M. Dreyer, Attorney, O. P. A., and Carl W. Berueffy, District Enforcement Attorney, O. P. A., all of Washington, D. C., were on the brief, for appellants.

Mr. T. Edward O'Connell, of Washington, D. C., submitted on the brief for appellees.

Before MILLER, EDGERTON, and ARNOLD, Associate Justices.

PER CURIAM.

The Administrator of the Office of Price Administration (OPA) appeals from an injunction which restrains him (1) from enforcing a suspension order against appellees and (2) from refusing to issue to appellees "sufficient ration points of all kinds to enable them to conduct their business in a proper manner." The evidence in the case consists entirely of the record of the OPA proceeding in which the suspension order was issued.

Appellee corporation operates The Stables restaurant. Appellee Moran owns all but two shares of stock in the corporation and manages the restaurant. The District Enforcement Attorney of the Office of Price Administration filed charges that appellees had bought large quantities of beef for the restaurant, on three different occasions, without giving up ration points. The Chief Hearing Commissioner, Region II, held a hearing to determine whether a suspension order should be issued. Counsel for appellees, and appellee Moran personally, took part in the hearing. It was conducted with marked ability, courtesy and good humor.

The Commissioner found, on ample evidence, that "during the period from December 1, 1943, to January 5, 1944, the respondents received, in three separate deliveries, at least 1800 pounds of ribs of beef, without surrendering any ration points therefor at any time. In so doing they violated Section 10.5 of Ration Order No. 16 and, as institutional users, Section 15.1 of General Ration Order No. 5. Respondents also violated Section 2.8 of General Ration Order No. 8, which prohibits ac-

114

quisition of a rationed commodity except in accordance with the provisions of a Ration Order. Under the circumstances * * * respondents have demonstrated that they should no longer be permitted to participate in the distribution of rationed meat."

The purchases were made and deliveries accepted on the premises of the restaurant. The testimony to that effect was direct and convincing. There was practically no contrary testimony. There was no testimony that appellee Moran personally took any part in the transactions. She denied knowledge of them, but this testimony of hers was entirely unsupported and, as the Hearing Commissioner observed, highly improbable. Moreover she, as well as the corporation, was responsible for the transactions even if she did not know of them. The owner or operator of a business cannot "divest himself of responsibility for observing the rationing rules by any such simple expedient as turning the actual details of running the [business] over to a servant."[1]

The Hearing Commissioner issued a suspension order which provided that appellees "as institutional users * * * shall not directly or indirectly acquire or accept any transfer of meats as defined and covered by Ration Order No. 16, nor shall they use, serve, sell, transfer or dispose of any such meats, to anyone, so long as meats shall be rationed; nor shall any person transfer or deliver any such meats to the respondents, as institutional users, for use, service, sale or other disposition so long as meats shall be rationed"; also that appellees " * * * shall not directly or indirectly acquire any goods covered by Ration Order No. 16 other than meats, nor accept any transfers thereof, nor shall any person transfer or deliver any such foods to said respondents, so long as the respondents shall continue in default on any part of the point indebtedness represented by 1800 pounds of ribs of beef." In determining that the public interest required permanent suspension of appellees as purveyors of meats, the Commissioner took into consideration the fact that a previous suspension order had been issued against appellee Moran for having largely overdrawn her meat ration account. The Hearing Administrator affirmed the order of the Hearing Commissioner. Both officers filed full and careful opinions. Before the Hearing Administrator's decision was rendered, appellees filed the present suit to enjoin enforcement of the suspension order.

Since the order was entered after a fair hearing and was supported by ample evidence it was valid and the judgment of the court enjoining its enforcement must be reversed. "The suspension order rests on findings of serious violations repeatedly made. These violations * * * indicated that a scarce and vital commodity was being distributed in an inefficient, inequitable and wasteful way. The character of the violations thus negatives the charge that the suspension order was designed to punish petitioner rather than to protect the distribution system and the interests of conservation."[2]

This leaves to be noticed certain findings of the court which attribute misconduct to the Office of Price Administration and its attorneys. The charges are serious and, unanswered, may very well obstruct the due administration of the law. Accordingly we have thought it our duty to search the record to determine whether it supports them. We find that it does not. In our opinion they are clearly erroneous.

Reversed.

[1] Talbert v. Sims, 4 Cir., 143 F.2d 958, 960.

[2] Steuart & Bro., Inc., v. Bowles, 322 U.S. 398, 406, 64 S.Ct. 1097, 88 L.Ed. 1350.