149 F.2d 364 (1945)
WELLS LAMONT CORPORATION
v.
BOWLES, Price Administrator.
No. 168.
United States Emergency Court of Appeals.
Heard January 19, 1945.
Filed May 1, 1945.
As Amended on Denial of Rehearing May 28, 1945.
John R. Whitman, of Chicago, Ill. (Ernest S. Ballard and Karl D. Loos, both of Chicago, Ill., on the brief), for complainant.
Jacob D. Hyman, Chief, Court Review Price Branch (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, of Washington, D. C., Lester N. Salwin, and Samuel M. Singer, Attys., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.
Before MARIS, Chief Judge, and LINDLEY and LAWS, Judges.
Heard at Chicago January 19, 1945.
LINDLEY, Judge.
Complainant, a manufacturer of leather and cotton work and dress gloves, complains of the denial on September 2, 1944, of its protest filed July 10, 1944, questioning the validity of Section 1499.2 of General Maximum Price Regulation and Amendment 33 thereto.
Complainant produced more than 400 styles of gloves in 1941. On December 1, 1941, it issued a price list which, on January 22, 1942, it withdrew by notice to its customers, announcing a new one March 17, 1942. Shipments to apply on commitments under the December list continued into the month of March, however, and during that month there were deliveries of at least 112 styles of gloves on the basis of the December, 1941, prices. Of these, 10 involved sales made during March and the remaining 102, orders accepted prior to March. Approximately 55 styles were delivered in March at the higher prices of the March price list.
*365 General Maximum Price Regulation (7 Fed.Reg. 3153), issued April 28, 1942, went into effect May 11, 1942. Section 1499.2 provides that the maximum price for any commodity shall be the highest price charged by the seller during March, 1942, (1), for the same commodity or, (2), if no charge was made for the "same commodity," that for "the similar commodity most nearly like it." "Highest price charged by a seller during March, 1942" is defined as (a) "the highest price which the seller charged * * * for a commodity delivered during March 1942 to a purchaser of the same class; or (b) if the seller made no such delivery * * * during March 1942, his highest offering price for delivery * * * during that month to a purchaser of the same class; * * *."
Complainant's president, Mr. Wells, on June 3, 1942, discussed the regulation and its application to his company with the Acting Chief of the Work Clothing Unit of the Office of Price Administration and his assistant. These officials informed him that the regulation applied to all the gloves his company sold and that its ceiling prices had been established at the prices quoted in its March 17, 1942, price list. Relying on this oral statement, complainant continued sales at its March prices until August 18, 1943, when it received a letter from the chief enforcement attorney of the Office of Price Administration asserting that by so doing it was violating the Regulation. On August 24, 1943, respondent instituted an action for damages against complainant, which is still pending.
Complainant contends that Section 1499.2 as construed by the Administrator, unreasonably deprives it of the right to avail itself of its customary in-line pricing methods and thus violates Section 2(h) of the Emergency Price Control Act, 50 U.S.C.A. Appendix § 902(h), providing that "The powers granted in this section shall not be used or made to operate to compel changes in the business practices, cost practices or methods, or means or aids to distribution, established in any industry, or changes in established rental practices, except where such action is affirmatively found by the Administrator to be necessary to prevent circumvention or evasion of any regulation, order, price schedule, or requirement under this Act."
Complainant declares that use of the in-line pricing system is common in the industry; that it has adhered to the practice for many years and employed it in preparation of the March price list. It defines the term as a plan by which differentials with respect to the selling prices of its various gloves within the same classes are maintained and explains the operation as follows. Complainant manufactures general groups of gloves, among which are full leather, leather palm, rubber, jersey and cotton flannel. Each group is composed of several classes, each of which in turn includes numerous styles. Differences in weight, quantity and quality of material in different styles within a single class carry standardized differentials in selling prices. Thus, in the cotton flannel glove group, the 8-ounce glove is used as the base. Gloves made of heavier material in the same style are priced by adding a per ounce differential to the base glove; and the prices of the lighter weights are found by subtracting the differential from the heavier glove.
Complainant contends that the regulation, as construed by the Administrator, is invalid in not permitting it to utilize as its ceiling price for a style of glove delivered during March, 1942, on prior commitments, the price which is determined for that style by the application of its alleged traditional and customary price differentials and that failure to approve this method, which is a business practice and a means and aid to distribution, constitutes a violation of Section 2(h). In the event we find that Section 1499.2 is valid, complainant seeks a ruling that it be permitted to file application for adjustment on grounds of "hardship" or "abnormally low prices," as was formerly permitted prior to the issuance of Amendment 33, November 2, 1942, superseding Section 18. The latter had permitted adjustment of established prices in such cases, provided such relief did not cause or threaten to cause an increase in retail prices. The Amendment terminated the right to file requests for such adjustment after a specified date in 1942, and authorized relief thereafter only upon a showing that it was necessary in order to relieve a local shortage in the supply of an essential commodity. Complainant insists that, inasmuch as it had relied upon the oral interpretation rendered by officials of the Office of Price Administration and was not notified of any claim that it was violating the regulation until some months after the effective date of Amendment 33 *366 removing the right to apply for adjustment and there had previously been no occasion, therefore, for it to apply for adjustment, it should not now be foreclosed from relief.
At the time the protest denial of which is questioned here was filed, the regulation had been superseded as to all articles manufactured by complainant except some twenty or more styles of leather gloves. Respondent has suggested that the situation is not unlike that in Thomas Paper Stock Co. v. Bowles, Em.App., 148 F.2d 831. We find, however, at least two distinguishing features. First, the regulation is still in effect as to a substantial quantity of gloves manufactured by complainant. In the second place, complainant had filed protests with the Administrator before the regulation was modified. The first was dismissed as untimely because it came after the sixty-day limitation for protests then provided had expired. Certain protests were pending, however, at the time the statute was amended to remove this limitation, and it was stipulated that they should be dismissed without prejudice to complainant's right to renew the same. All this occurred prior to supersedure of the regulation and while it remained in full force and effect. Complainant then filed the protest, denial of which is involved here.
We think it was the intent of both complainant and respondent to preserve the existing rights of the former by stipulating the entry of the order of dismissal without prejudice and that it is only fair that we treat complainant's protest as a continuation of its earlier ones as of a date when the regulation was in full force and effect as to all gloves manufactured by complainant. Indeed, respondent, in oral argument, expressly acceded to this. Consequently we treat the protest as one filed while the regulation was still in effect before it was superseded, thus bringing the case within Montgomery Ward v. Bowles, Em.App., 147 F.2d 858.
We are not confronted with any question as to proper interpretation of the regulation. During the course of the oral argument both parties requested us to assume, for the purpose of our disposition of the controversy, that the Administrator's interpretation is correct and complainant expressly stated that, so far as this cause is concerned but only for the purpose of our decision, it desired us to accept the interpretation of the Administrator. Thus, in determining the question of validity, we are relieved of any burden of construing the regulation.
Our real question is whether the regulation, as interpreted by the Administrator, is invalid because it failed to adopt as a price freezing technique the in-line pricing methods of complainant, claimed to be traditional practices in the industry. The issue eventually turns upon a determination of whether failure of the Administrator to apply to complainant a price fixing system in accord with such practices has resulted in a violation of Section 2(h) of the Emergency Price Control Act protecting business practices. The question is narrow and leads to two inquiries. First, whether complainant has proved an established practice or means or aid to distribution in its business and, second, whether what has been done is a business practice or means or aid to distribution within the meaning of Section 2(h) of the Act. If our decision is in the negative upon the first, it becomes unnecessary to decide the second.
The record discloses that the socalled in-line pricing system and its characteristics were given careful consideration by the Administrator. He found that "many of the ramifications of inline pricing * * * are not only irreconcilable with the regulation itself but their application would lead to circumvention and evasion, and render practical enforcement difficult." Complainant's price differentials are not uniform. Those in the December 1941 price list varied from those in March 1942 list in many particulars. Many were increased. Others were decreased. According to the dictionaries, both lay and legal, a practice is a custom or usage, a customary usage, something habitually and uniformly performed. It implies uniformity and continuity. To establish is to make stable or firm; to fix in permanence and regularity, to settle or secure on a firm basis, to settle firmly or to fix unalterably. The system as presented by complainant itself reflected many irregularities and in view of the unsatisfactory evidence, we think it can not be said that the socalled in-line method was either an established practice or an established means or aid to distribution, uniformly followed or clearly settled. In other words, the proof does not disclose an established business *367 practice or means or aid to distribution. We are unable to say as a matter of law that the Administrator was arbitrary and capricious in failing to frame the regulation so as to protect something which was not uniform, settled or established. Rather we think the Administrator had before him substantial evidence to support his position that, while in-line pricing may represent a general tendency in the industry, it was not applied with precision by complainant, was not consistently or uniformly applied by it, and fell far short of an established practice or means or aid to distribution.
Complainant's further claim is that Amendment 33 is unfair and should be amended, or complainant excepted from its operation, in order that it may apply for relief on grounds of hardship or abnormally low prices, as permitted by the regulation before promulgation of Amendment 33. Complainant asserts it was deterred from filing a request for adjustment because it had at all times relied upon the oral interpretation given by two officials in the Office of Price Administration. These gentlemen were not authorized by the Administrator to render official interpretations, as provided in Sections 1300.49 and 1300.50 of Procedural Regulation No. 1, effective February 12, 1942, and thereafter, including the time when the alleged oral interpretations were given complainant.
It must be presumed that complainant was advised of the procedure it was required to follow in order to obtain an official interpretation upon which it could properly rely. And, since it failed to comply with the prescribed method, it is not entitled to rely upon unofficial oral advice given by subordinate officials in the Office of Price Administration. At first blush, this may seem harsh but, obviously, the Administrator can not be bound by various oral interpretations which happen to be made by his hundreds, perhaps thousands, of employees, in violation of published regulations. He has prescribed a reasonable procedure by which persons subject to the regulations may obtain official interpretations, by which all will be bound. Complainant is not entitled to rely on an unofficial interpretation. Nichols & Co. v. Secretary of Agriculture, 1 Cir., 131 F.2d 651; United States v. San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050; Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791; Fleming v. Miller, D. C., 47 F.Supp. 1004.
Judgment will enter dismissing the complaint.