BOWLES, Price Adm'r, v. INDIANAPOLIS
GLOVE CO.

No. 8692.

Circuit Court of Appeals, Seventh Circuit.

Aug. 3, 1945.

Rehearing Denied Aug. 28, 1945.

Fleming James, Jr., Director, Litigation Division, Albert M. Dreyer, Atty., O.P.A., Thomas I. Emerson, Deputy Adm'r for Enforcement, and Abraham Glasser, Sp. Appellate Atty., O.P.A., all of Washington, D. C., and John E. Scott, O.P.A., of Indianapolis, Ind., for appellant.

William H. Thompson, Perry E. O'Neal, Patrick J. Smith, and Russell J. Ryan, Jr., all of Indianapolis, Ind., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

The Administrator of the Office of Price Administration appeals from a judgment of the District Court in favor of the defendant. The suit is to recover treble damages for alleged violation of the General Maximum Price Regulation, as amended, by sales of work gloves at prices in excess of those established by the regulation. By joint request of the parties, the court limited the trial on the merits to those issues not involving the measure of damages, reserving that question for determination, if necessary, after determination of the other issues.

The principal question presented on this appeal relates to the construction of the regulation and whether it establishes the maximum price of a commodity at the highest price at which it was actually delivered during March, 1942, if the only deliveries in that month were made under contracts made before March, 1942. The District Court found that it did not, and that under the regulation, defendant's price list, adopted March 21, 1942, established its maximum prices regardless of whether or not any deliveries of gloves were made thereunder during March.

There is no dispute between the parties over the basic facts, most of which were found by the court in accordance with their stipulation. Defendant is a manufacturer and wholesaler of work gloves, making over 500 different styles or items. March 21, 1942, it published a new price list fixing prices as to all items higher than the prices charged in an earlier price list put out in December, 1941. Approximately 300 styles of gloves were delivered during the month of March, 1942, only at prices established by the December list, or earlier lists, or at prices arrived at by applying the trade differentials to such lists, all of which deliveries were made pursuant to prior commitments. All sales made after March 21, 1942, were for prices established by the price list of that date or in accordance with trade differentials in the case of gloves not listed.

The General Maximum Price Regulation was promulgated April 28, 1942, 7 Fed.Reg. 3153, and became effective May 11, 1942, 7 Fed.Reg. 3156. By section 1499.1, it prohibited any dealing in commodities or services above maximum prices, and by section 1499.2, it established such maximum prices in those cases in which the seller dealt in the same or similar commodities or services during the month of March, 1942, at the highest price charged by the seller during such month for the same commodities or services, or, if no charge was made for the same commodity or service, for the similar commodity or service most nearly like it; it defined such highest price charged as:

"(a) The highest price which the seller charged for a commodity *delivered* or service *supplied* by him during March 1942; or

"(b) If the seller made no such delivery or supplied no such service during March 1942 his highest *offering price* for delivery or supply during that month."

The parties stipulated that on March 3, 1943, the Administrator notified defendant that the prices which it was then charging and receiving for certain of its work gloves were in excess of the maximum prices established pursuant to the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 901 et seq., and that this was the first notice defendant or its officers had received that there was a claim by the OPA that it was violating the regulation in question; that defendant immediately upon receipt of the notice ceased to deliver gloves and did not deliver any at the prices fixed in its March 1942 list until after the receipt of a letter from the OPA March 18, 1943, containing the following paragraph:

"We have sought but not yet obtained a clarification of your position from the Regional and National Offices. We have been advised, however, that information is being assembled by the National Office for use in preparation of a specific regulation establishing maximum prices for work gloves applicable to the entire industry. Believing that the present situation constitutes a serious impediment to the production of goods and materials essential to the prosecution of the war, we see no alternative other than to advise you to proceed

with shipments on the basis of your March 21, 1942, list prices pending a definite ruling and decision by the Cleveland or Washington Offices. It is understood that this does not legalize or validate the prices charged from May 11, 1942, the date the General Maximum Price Regulation became effective, up to the present time."

Between March 4 and 18, 1943, defendant made no sales or deliveries of any gloves.

The parties further stipulated that the Administrator does not claim that defendant willfully violated the regulations by its sale of gloves during the times referred to in the complaint, nor does he dispute defendant's contention that what it did in the sale of its gloves, it did in the belief that it had the right to do under the applicable regulations, and that no claim was asserted prior to March 2, 1943, that defendant was violating such regulations.

Defendant earnestly contends that it at all times, in the sale of its work gloves, complied with the regulation and at no time sold its product at a price in excess of the maximum established by the regulation, and the District Court, by its decision, sustained that contention. Since that decision, however, the Supreme Court has passed upon the question of the construction of a similar regulation with respect to sales made pursuant to prior commitments. In the case, Bowles v. Seminole Rock and Sand Co., 65 S.Ct. 1215, 1218, it upheld the Administrator's contention with respect to a regulation identical with the one here involved, saying:

"* * * The regulation recognizes the fact that more than one meaning may be attached to the phrase 'highest price charged during March, 1942.' The phrase might be construed to mean only the actual charges or sales made during March, regardless of the delivery dates. Or it might refer only to the charges made for actual delivery in March. Whatever may be the variety of meanings, however, rule (i) adopts the highest price which the seller 'charged * * * for delivery' of an article during March, 1942. The essential element bringing the rule into operation is thus the fact of delivery during March. If delivery occurs during that period the highest price charged for such delivery becomes the ceiling price. Nothing is said concerning the time when the charge or sale giving rise to the delivery occurs. One may make a sale or charge in October relative to an article which is actually

delivered in March and still be said to have 'charged * * * for delivery . * * * during March.' We can only conclude, therefore, that for purposes of rule (i) the highest price charged for an article delivered during March, 1942, is the seller's ceiling price regardless of the time when the sale or charge is made.

"This conclusion is further borne out by the fact that rule (ii) becomes applicable only where 'the seller made no such delivery during March, 1942,' as contemplated by rule (i). The absence of a delivery, rather than the absence of both a charge and a delivery during March, is necessary to make rule (i) ineffective, thereby indicating that the factor of delivery is the essence of rule (i). * * *"

We think this decision of the Supreme Court conclusively establishes the rule that the seller's maximum price must be determined by his highest price charged for goods actually delivered during the basic month regardless of whether or not such deliveries were pursuant to prior commitments, and that he is entitled to use a March price list only as to those items actually delivered thereunder or of which there were no deliveries during the month. Under this rule, defendant's prices, fixed by its March list as to over 300 items of which it made deliveries in March only under its December list exceeded the maximum established by the General Maximum Price Regulation, hence were a violation of the regulation. In considering the case of Bowles v. Good Luck Glove Co., 7 Cir., 143 F.2d 579, we were of the opinion that the regulation was susceptible of a different interpretation. The decision of the Supreme Court in the Seminole case, supra, has indicated the error of our earlier decision.

Defendant further contends that even if it be held that its prices violated the regulation, it is not liable for such violation for the following reasons:

1. Because in the sale and delivery of its gloves it acted in entire good faith and in the belief that such sales and deliveries were made in pursuance of the applicable regulations;

2. Because the Administrator is not entitled to recover damages, having sustained no damages; and,

3. Because, if the action be one for penalty, such penalty is so excessive and unreasonable that its imposition would de-

prive defendant of its property without due process of law;

4. Because § 205(e) of the Emergency Price Control Act, on which this action is based, is so indefinite as to the circumstances under which such action may be brought by the Administrator that it is insusceptible of enforcement;

5. Because the defendant has never had ample and reasonable opportunity to contest the validity of the regulation as here construed by the Administrator, in violation of the 5th Amendment to the Constitution;

6. Because the Administrator and the United States are estopped to assert defendant's liability for any sales made during the period of time in which they, by their conduct, induced it to sell its gloves at the prices now contended to be in error of law.

■ With respect to the first defense, good faith, it must be noted that contrary to defendant's contention, that does not constitute a total defense to a civil action brought by the Administrator. The regulation lays down a specific mandate for establishing maximum prices, and deviation therefrom cannot be called action pursuant thereto under the terms of § 205(d), 50 U.S.C.A.Appendix, § 925(d), upon which defendant relies.[1] In the case, Bowles v. Hasting, 146 F.2d 94, 95, the Court of Appeals for the Fifth Circuit, reviewing a decision of a District Court denying damages for violations of price orders and regulations on a finding that such violations were not willful, said, "Wilfulness in violation is made a necessary ingredient for criminal punishment under Section 205(b). It is not made necessary in the civil suit. When an excess in price is charged the damage is done, and the excess must be repaid, tripled in order to prevent recurrence. The court has no discretion, as it has with reference to the grant of an injunction, to withhold the damages."

To the same effect is Bowles v. Franceschini, 145 F.2d 510, 512, where the Court of Appeals for the First Circuit

said, "From the inclusion of the word 'willfully' in § 205(b), which provides for criminal penalties, and its omission in §. 205(e), we can reasonably infer that Congress intended to omit the word 'willfully' from the latter section and that, therefore, good faith is immaterial. That Congress could make use of 'good faith' as a defense when it wanted to appears in § 205(d) which provides for no liability 'in respect of anything done or omitted to be done in good faith pursuant to * * * any regulation, order, price schedule * *.' The purpose of this section is to protect those who act 'pursuant to' the provisions, of, or regulations under the Act as distinguished from those who 'violate' it. It does not appear that the sales made in good faith in the instant case were made 'pursuant to' any provision or regulation under the Act. * * *" See also Bowles v. American Stores, 78 U.S.App.D.C. 238, 139 F.2d 377, certiorari denied, 322 U.S. 730, 64 S.Ct. 947, 88 L.Ed. 1565.

■ As to defendant's second and third contentions relating to the right of the Administrator to bring the action for damages in the absence of a showing of actual damage, or for penalty because of the excessiveness of such penalty, similar contentions were argued in Speten v. Bowles, 8 Cir., 146 F.2d 602, 604, certiorari denied 65 S.Ct. 1023. There the Court of Appeals for the Eighth Circuit said, "It has, however, been so long recognized, as no longer to be an open question, that a congressional provision for a reasonable and measured recovery in favor of the United States, directly or through one of its agencies, as a civil penalty or as remedial damages, for violation of a statute involving the public interest, is not within the prohibition of the Fifth Amendment."

■ As to the charge that the section under which the action was brought is so vague and indefinite as to the circumstances under which the Administrator may sue that it is insusceptible of enforcement, this court has recently passed on the question, finding no difficulty in determining the circumstances under which he may

[1] "No person shall be held liable for damages or penalties in any Federal, State, or Territorial court, on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provision of this Act or any regulation, order, price schedule, requirement, or agreement thereunder, or under any price schedule of the Administrator of the Office of Price Administration or of the Administrator * * * notwithstanding that subsequently such provision, regulation, order, price schedule, requirement, or agreement may be modified, rescinded,. or determined to be invalid. * * *"

bring his action. See Bowles v. Rogers, et al., 7 Cir., 149 F.2d 1010. See also Bowles v. Seminole Rock & Sand Co., 5 Cir., 145 F.2d 482, reversed on other grounds, 65 S. Ct. 1215.

We cannot agree with defendant's contention that it has had no opportunity to contest the validity of the regulation as here construed by the Administrator. Section 203 of the Emergency Price Control Act, as amended June 30, 1944, 50 U.S.C.A. Appendix, § 923, provides for the procedure for filing protests against any regulation, order or price schedule *at any time* after issuance or effective date thereof and for disposition of such protests by the Administrator. Hence it is still within appellee's power to make its protest to the Administrator, and, if denied, under the provision of § 204, 50 U.S.C.A.Appendix, § 924, it may have such ruling reviewed by the Emergency Court of Appeals, which alone has authority to pass upon the question of constitutionality or statutory validity of regulations. As to this, the Supreme Court said in the Seminole case, supra, "We do not, of course, reach any question here as to the constitutionality or statutory validity of the regulation as we have construed it, matters that must in the first instance be presented to the Emergency Court of Appeals. * * * Nor are we here concerned with any possible hardship that the enforcement of the 60-cent price ceiling may impose on respondent. Adequate avenues for relief from hardship are open to respondent * * *."

Defendant's last contention is of estoppel. It bases this argument on the conduct of the Administrator in inducing it, for a part of the period complained of, to sell its gloves at prices now charged to violate the law. A similar argument was presented to the Emergency Court of Appeals in the case, Wells Lamont Corporation v. Bowles, 149 F.2d 364, 367. The court, speaking through Judge Lindley, said, "It must be presumed that complainant was advised of the procedure it was required to follow in order to obtain an official interpretation upon which it could properly rely. And, since it failed to comply with the prescribed method, it is not entitled to rely upon unofficial oral advice given by subordinate officials in the Office of Price Administration. At first blush, this may seem harsh but, obviously, the Administrator can not be bound by various oral interpretations which happen to be made by his hundreds, perhaps thousands, of employees, in violation of published regulations. He has prescribed a reasonable procedure by which persons subject to the regulations may obtain official interpretations, by which all will be bound. Complainant is not entitled to rely on an unofficial interpretation." That part of the advice relied upon by defendant in the case at bar to sustain its charges of estoppel was in writing makes it no more binding upon the Administrator than the oral advice in the Wells case.

We are convinced that under the decision of the Seminole case and the other authorities cited, the District Court was in error in holding that the defendant was not liable for the damages claimed by the Administrator. Since the cause must be remanded for the purpose of trial on the issue of damages, we make one further observation. As in the Speten case, supra, shortly after entry of the judgment here, Congress amended section 205(e) of the Act to provide that the seller's liability should be "whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation." This amendment was made applicable to proceedings pending on the date of enactment as well as to proceedings instituted thereafter. We agree with the court in the Speten case that the proceeding was pending at the date of the enactment of the amendment, hence that, upon the further proceedings which must follow in the cause, defendant is entitled to introduce any pertinent evidence to indicate that it did not fail to take practicable precautions. The parties have already stipulated and the court found that the violations were not wilful.

Judgment reversed and cause remanded for further proceedings.