## BOWLES, Administrator, OPA, v. JONES.

### No. 3144.

Circuit Court of Appeals, Tenth Circuit.

Sept. 19, 1945.

A. M. Dreyer, of Washington, D. C. (George Moncharsh, Fleming James, Jr., and David London, all of Washington, D. C., David Love, of Dallas, Tex., and O. B. Martin, of Oklahoma City, Okl., on the brief), for appellant.

Roy C. Lytle, of Oklahoma City, Okl. (D. I. Johnston, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS and MURRAH, Circuit Judges, and SAVAGE, District Judge.

SAVAGE, District Judge.

This appeal challenges the judgment of the District Court denying to Chester Bowles, Administrator, Office of Price Administration, recovery of statutory damages because of the alleged sale by the defendant, Wayne Jones, of cottonseed meal at prices in excess of the maximum fixed by Revised Maximum Price Regulation 444, 8 F.R. pp. 203, 1121,[1] issued pursuant to the provisions of the Emergency Price Control Act of 1942, as amended, 56 Stat. 23, 58 Stat. 640, 50 U.S.C.A.Appendix § 901 et seq.

The facts are not in dispute. Defendant owned and operated at the same location the only cotton gin and feed store at Newcastle, Oklahoma. The ginning season extended from September through January. He purchased the cottonseed from growers who patronized his gin and sold to cottonseed oil mills. He bought cottonseed meal from processors, which was sold the year around to feeders of livestock.

The Administrator on July 31, 1943, issued Maximum Price Regulation 444[2] which among other things established maximum prices at which cottonseed meal might be sold by processors, grinders, jobbers, wholesalers, retailers and other sellers. A "retailer" was defined as a person who buys the product and resells to a feeder. The defendant, as a retailer, was authorized by the regulation to sell cottonseed meal at a price of $5.50 per ton above the ceiling price paid to his supplier. He did not take advantage of the full markup permitted.

The regulation was superseded on January 10, 1944, by the revised regulation, which did not become effective as to defendant, because of the necessity of correcting a typographical error, until February 3, 1944. The revised regulation fixed a separate maximum price for sale of cottonseed meal by a "recognized handler", a term unknown to the cottonseed industry. A "recognized handler" was defined as "any person other than a processor regularly engaged in the business of growing, purchasing or selling cottonseed." To the conventional definition of the term "retailer" was added a provision expressly excluding recognized handlers from such category. The maximum price for sales by a recognized handler was the same as the maximum price of the processor plus transportation charges. A retailer was allowed the same markup of $5.50 per ton as authorized by the regulation. Thus a retailer was permitted to sell at $5.50 per ton higher than a recognized handler.

On September 16, 1944, the revised regulation was superseded by Food Products Regulation, No. 3.[3] Supplement I thereto dealt with cottonseed meal and abandoned the recognized handler classification. The definition of retailer omitted the provision excluding recognized handlers and once again encompassed the business in which the defendant was engaged. The $5.50 markup for retailers was continued. In his "Statement of Considerations" influencing the adoption of the new regulation, the Administrator made clear the necessity for eliminating the recognized handler classification. He pointed out that most of the persons who fell in this group were growers and ginners of cottonseed; that the prohibition of a markup had tended to divert distribution of cottonseed products from normal channels; that the markups permitted by Supplement I would more closely approximate those normal to the trade prior to price control, and that such

---

[1] Hereinafter called revised regulation.
[2] Hereinafter called regulation.
[3] Hereinafter called new regulation.

markups would promote better distribution of cottonseed products through normal trade channels.

The only sales in controversy are those made from February 3, 1944, to September 16, 1944, the period during which the revised regulation was controlling. During such period the defendant sold 459 one hundred pound bags at the rate of $58 per ton, including state sales tax, the last sale being made on April 10, 1944. His ceiling price, if a recognized handler as contended by the Administrator, was $55.10 per ton, the amount paid to processors plus transportation charges. If he may be classified as a retailer as urged by defendant, his ceiling price was $60.60 per ton. The alleged violation turns on the question of whether defendant was a recognized handler as defined by the revised regulation.

 The trial court held that defendant was a recognized handler and had violated the revised regulation, but thought the violation too technical to justify a judgment against the defendant and that the public interest would not be served by such a judgment, especially in view of the revocation of the revised regulation. The reluctance of the trial court to enter a judgment against the defendant under the state of facts here disclosed is understandable. Defendant, while classified as a retailer under the regulation, was allowed a $5.50 per ton margin of profit. The recognized handler under the revised regulation was permitted no markup whatever. If a person so classified bought and sold cottonseed meal he inevitably suffered a loss. After the effective date of the new regulation, the defendant again became a retailer with an authorized margin of profit. The Statement of Considerations issued by the Administrator contemporaneously with the new regulation indicated a realization that the inclusion of the recognized handler classification in the revised regulation was improvident. Since the Administrator obviously acknowledged that a mistake was made by denying to recognized handlers a profit during the brief period that the revised regulation was in force, the trial court apparently concluded that this action should not have been instituted. But the revocation of the revised regulation did not extinguish the liability which accrued while it was in effect. United States v. Hark, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290. There is no suggestion of invalidity.

Indeed, its validity could not be questioned here. Jurisdiction to pass upon the validity of regulations promulgated by the Administrator is committed exclusively to the Emergency Court of Appeals, the special court created by the Emergency Price Control Act. Bowles v. Nu Way Laundry Co., 10 Cir., 144 F.2d 741. The responsibility of determining whether a violation of a regulation is of sufficient consequence to warrant prosecuting an action in the public interest to recover statutory damages rests with the Administrator. The decision involves questions of administrative policy in the enforcement of the Act wholly outside the scope of judicial inquiry.

The defendant concedes that the judgment cannot be supported on the grounds stated by the trial court. He asserts that the court rightfully entered judgment for the defendant but for a wrong reason. He seeks to uphold the judgment on two grounds, (1) that the defendant was not a recognized handler as defined by the revised regulation, and, (2) that the Administrator could not maintain the action.

 As to the first contention the conclusion that defendant was a recognized handler as defined by the revised regulation is inescapable. He was not a processor and was regularly engaged in the business of purchasing and selling cottonseed. It is suggested that defendant was engaged in two businesses; that in the business of ginning cotton and buying and selling cottonseed he was a recognized handler, but that in the business of selling feed, including cottonseed meal, he was a retailer. The fallacy of this argument is apparent. The definition of retailer found in the revised regulation is controlling and was so drafted as to expressly exclude recognized handlers. Fox v. Standard Oil Company, 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780; Marlene Linens v. Bowles, Em.App., 144 F.2d 874.

 The second contention of defendant that the Administrator may not maintain this action deserves but scant attention. Section 205(e) of the Act provides: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption, other than in the course of trade or business may bring an action * * *" and if—"the buyer is not entitled to bring suit or action under this subsection, the Administrator

may bring such action under this subsection on behalf of the United States." If the feeders bought the cottonseed meal from defendant for consumption in the course of trade or business, they were not entitled to bring the action and the cause of action vested in the Administrator. In the agreed statement of facts upon which the case was submitted to the court we find this statement: °"Sales * * of cottonseed meal referred to herein were made to feeders or other purchasers in the course of trade or business of such purchasers." But laying aside the stipulation, we think it too clear for argument that feeders of livestock are engaged in business and that the meal purchased by such feeders was for consumption in the course of business. Bowles v. Rogers, 7 Cir., 149 F.2d 1010; Speten v. Bowles, 8 Cir., 146 F.2d 602. It follows that the action was properly instituted by the Administrator.

At a new trial the court may, if the issue be tendered in mitigation of damages, determine whether the violations were "neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation" as provided in Sec. 108(b) of the Stabilization Extension Act of 1944, 58 Stat. 640, amending Sec. 205(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 925(e). See Speten v. Bowles, supra; Bowles v. Sharp, .8 Cir., 149 F.2d 148.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.