**MARTINI et al. v. PORTER, Price Administrator.**

**No. 11082.**

Circuit Court of Appeals, Ninth Circuit.

July 18, 1946.

Rehearing Denied Sept. 25, 1946.

---

DENMAN, Circuit Judge, dissenting.

———◆———

Theodore Tamba, of San Francisco, Cal., for appellants.

George Moncharsh, Deputy Adm'r for Enforcement, Milton Klein, Director, Litigation Division, David London, Chief, Appellate Branch, and Samuel Rosenwein, Atty., OPA., all of Washington, D. C., and Herbert H. Bent, Regional Litigation Attorney, OPA., of San Francisco, Cal., for appellee.

Before GARRECHT, DENMAN, and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment awarding treble damages against appellants in an action instituted by the Price Administrator in the district court pursuant to Section 205(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925(e), hereinafter referred to as the Act. [1]

In its complaint, plaintiff charged that appellants, and others, sold 3,782 cases of

[1] The suit was originally instituted against Murray A. Schutz, doing business as Distillers Distributing Company; Louis Novone and C. Garibotti, doing business as Miramonte Company; Mildred Martini and Denny Martini, doing busines as Lakeside Cut-Rate Liquor Store; Atherton F. Reed; Edward D. Hoffman; John Doe and Richard Roe. Prior to trial, the action was dismissed without prejudice as to defendants Schutz, and Novone and Garibotti, the Administrator having entered into separate compromises and discharges with them. After trial, the court granted judgment against defendants Mildred Martini and Denny Martini and dismissed the actions as to defendants Edward D. Hoffman and Atherton F. Reed. This appeal is prosecuted solely by the defendants Mildred Martini and Denny Martini.

Dunbar's Canadian Whiskey in excess of the maximum prices established by the General Maximum Price Regulation, 7 F.R. 3153, as amended; that none of the purchases was made for use or consumption other than in the course of trade or business, and prayed for treble damages. At the trial it appeared that appellants had purchased two carloads of cases of liquor in question, (less about 300 cases) from one of the original defendants, Murray A. Schutz for $35.72 a case, including all taxes. Acting as manager of appellants' two liquor stores, Denny Martini, on his own initiative or through agents, sold quantities of the liquor to certain taverns, liquor stores, markets, and similar purchasers at prices of $57.50 or $62.50 per case. It was for making these sales (at wholesale) at $57.50 or $62.50 per case instead of $37.61 per case, the price fixed under the order set forth in footnote 5, for which the trial court assessed treble damages.

The principal issue in this case involves the validity of a certain order (footnote 5) issued by the Regional Administrator during the course of the trial (June 24, 1944) purporting to establish appellants' maximum prices for wholesale and retail sales made prior to August 31, 1943. A brief discussion of the statute and regulations is necessary to present a clear picture of the case.

The sales herein were made during July and August, 1943. The General Maximum Price Regulation controls these sales. There are four sections under the G.M.P.R. providing methods for ascertaining maximum prices. The first, Section 1499.2(a), fixes prices at the highest price charged by the seller during March, 1942 for the same or similar commodities. The second, Section 1499.2(b), provides that if the seller made no such sales during March, 1942 then his maximum prices are those charged during March, 1942, by his most closely competitive seller for the same or similar commodities. The third, Section 1499.3(a), if the prior methods are unavailable, gives the seller a formula based on his maximum prices for his most comparable commodities delivered during March, 1942, provided he sold the comparable commodities at the same distributive level in March, 1942.

■ From the evidence, however, it clearly appeared that these *first three* pricing methods could not apply to appellants because they had not sold this liquor, nor a similar commodity, during March, 1942; nor had their competitors; nor had the appellants sold at wholesale during March, 1942. Therefore, the only pricing method that could lawfully be employed by appellants was the fourth pricing method (Section 1499.3(c) ). This Section provides in general that "the maximum price shall be a price determined by the seller *after specific authorization from the Office of Price Administration or any duly authorized officer thereof.*" [2] It was binding on appellants who came squarely within its terms.

■ Although Denny Martini testified that he telephoned the OPA concerning a ceiling price on this liquor, the trial court specifically found that Martini did not apply for a price ceiling, nor did the OPA at any time authorize appellants to sell the liquor at any price. [3] It is clear

[2] § 1499.3(c) provides: "In the case of a sale at wholesale or retail of a commodity which cannot be priced under paragraph (a) of this section, the maximum price shall be a price determined by the seller after specific authorization from the Office of Price Administration or any duly authorized officer thereof. A seller who seeks an authorization to determine a maximum price under the provisions of this paragraph shall file with the regional office of the Office of Price Administration for the region in which his principal place of business is located an application setting forth (1) a description of the commodity or commodities for which a maximum price is sought; (2) a statement of the reasons why such commodity or commodities cannot be priced under § 1499.2 or § 1499.3(a) of this General Maximum Price Regulation; and (3) any other facts which the seller wishes to submit in support of the application. The seller shall also submit such additional pertinent information as the regional office may require. Such authorization will be given in the form of an order prescribing a method of determining the maximum price."

[3] Denny Martini testified that he called the OPA to find the price ceiling on the

that 1499.3(c) is as much a "regulation prescribing a maximum price" as are the other three sections above described. To hold otherwise would invalidate a regulation, a power we lack. It is also true that appellants elected to wholly disregard its requirements.

The trial court confronted the question of whether, under the law and regulations, the order of June 24, 1944, issued by the Regional Administrator during the course of the trial, was a valid order, and whether it was proper to admit the order in evidence. Appellee maintains that the issuance of the order was clearly authorized under the broad terms of the Act and that issuing such an order was the only way in which the Administrator could sue for damages in this case. Otherwise the court would have no way of determining the amount of the damages flowing from sales made without any attempt whatever to conform to the requirements of 1499.3(c).

If this view be illogical we must consider a contrary view which might lead to the conclusion that appellants could lawfully ignore or defy the regulation in question and thereafter, when sued, as here, successfully defend the suit and retain the profits directly flowing from this act of defiance or indifference. [4]

If this court follows appellee's argument, the appellants would be in no different position than one who had secured a special price authorization (under 1499.3(c) ) and thereafter sold his commodity at prices exceeding those so authorized. However, this brings us face to face with the material question of whether the order of June 24, 1944 is one authorized by law. If it is not the judgment may not stand.

The order itself is not phrased skillfully.[5]

liquor in question and that he was told to "make yourself a fair profit and go ahead and sell the whiskey." Appellants contend that upon the basis of this testimony, appellee is estopped to proceed in this case. The trial court specifically found that Denny Martini did not call the OPA, and that appellee was not estopped from bringing this action. The finding is clearly warranted from the evidence and will not be disturbed. Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c. Therefore, appellants' claim of estoppel must fail, even if it is at all available. Cf. Bowles v. Indianapolis Glove Co., 7 Cir., 150 F.2d 597, 601; Wells Lamont Corp. v. Bowles, Em.App., 149 F.2d 364, 367.

[4] "Price control which cannot be made effective is at least as bad as no price control at all. It will not stop inflation, and enables those who defy regulation to profit at the expense of the buyers and sellers who unselfishly cooperate in the interests of the emergency." See Senate Rep. No. 931, 77th Con., 2d Sess., p. 8.

[5] "Order Under Section 3(a) and 3(c) of the General Maximum Price Regulation

"For the reasons set forth in an Opinion attached hereto and pursuant to authority vested in the Regional Administrator by Sections 3(a), and 3(c) of the General Maximum Price Regulation it is hereby ordered:

"(a) The maximum price which Denny Martini and Mildred Martini doing business as Lakeside Cut-Rate Liquor Stores, hereafter referred to as applicants, may charge for sales at wholesale of Dunbar's Canadian Whiskey, 90.4 proof, made prior to August 31, 1943, shall be $37.61 per case of 12 fifths, f. o. b. applicants' warehouse.

"(b) The maximum price which applicants may charge for sales at retail of Dunbar's Canadian Whiskey, 90.4 proof, made prior to August 31, 1943, shall be $50.02 per case of 12 fifths.

"(c) For sales of such whiskey made on and after August 31, 1943, applicants shall price in accordance with Maximum Price Regulation No. 445, as amended.

"(d) For all sales covered by paragraphs (a), (b), and (c) of this order applicants must maintain the records required by Maximum Price Regulation No. 445, as amended, including those specified in Section 7.9.

"(e) This order shall become effective upon its issuance.

"(f) This order shall be subject to correction, revocation, or amendment at any time hereafter, either by special order or by any price regulation issued hereafter or by any supplement hereafter issued as to any price regulation, the provisions of which may be contrary hereto.

"Ben C. Duniway
"Regional Administrator
"Issued and effective June 24th, 1944.

"The accompanying order sets maximum prices on Dunbar's Canadian Whiskey 90.4 proof, in cases of 12 fifths, sold prior to August 31, 1943, by the applicants above named.

It names appellants as applicants when clearly they did not apply for the order. The fact that it is to have a retroactive, or *nunc pro tunc* effect is expressed clearly enough in the language of the order. We believe that it must be read in the light of all of the surrounding facts. Both parties hereto view it as retroactive in effect. Appellee insists that it is meant to prescribe maximum prices for appellants' sales made prior to August 31, 1943 which sales could not be lawful unless and until made pursuant to an order of this general character authorizing a price (under 1499.3(c) ).

The form of the order may be open to criticism because it does not "prescribe a method of determining a maximum price." In form it sets a dollars-and-cents ceiling price on the whiskey, but on the face of the accompanying statement, it is clearly made to appear that this price results from the use of the price formula (or "method") set forth in M.P.R. No. 445. Under the circumstances, we believe this to be sufficient.

The Administrator had knowledge of the sales and the character of the liquor, and these factors were relied upon to justify application of the price formula taken from M.P.R. No. 445, which prescribed certain maximum price levels. The administrator here undertook to apply this formula to the prices fixed in his order herein. In view of the fact that the appellants' unsanctioned sales had to be viewed, considered and handled retrospectively, it would have been useless at the time of trial (or after all of the unsanctioned sales had been made), to go through the whole procedure prescribed by section 1499.3(c). By flouting the regulations, appellants had made it impossible for this prescribed procedure to have been applied with a prospective effect to the liquor sales here involved.

Appellants do not appear to have been injured by the *form* of the order. They have at no time challenged the correctness of the dollars-and-cents price resulting from the application of the formula (method) to the facts, and, therefore, we do not here review the accuracy of the calculation made and applied by the Administrator and apparently adopted by the court.

Appellants have not asserted that they were denied the opportunity to attack the Administrator's application of this formula (method) to the facts, although they have attacked the order on many other grounds.

If the language employed in the order had been narrowed to a degree where it prescribed *only* a "method" which should be employed for calculating and establishing a maximum price for the liquor in question rather than the dollars-and-cents form of order used, a dispute might legitimately have arisen in the trial over the accuracy of the price calculations resulting from the application of the "formula." But no such contention is made. Because we cannot condemn the retroactive character of the order we must regard it as a mere (and proper) adjunct to 1499.3(c). It is no more vulnerable to attack than a normal, prospective order issued under the provisions of the regulation.

Appellee's counsel argue that the Administrator had authority to issue this order and submit it in evidence at the trial under the powers given him by § 201(d) of the Act, 50 U.S.C.A.Appendix, § 921(d), and in vindication of his right to sue under § 205(e). See also the broad powers vested in the Administrator by §§ 2(a), 2(c), 2(d),

"Neither applicants nor any competitor sold the same or similar whiskey during March, 1942.

"Applicants did not sell any whiskey at wholesale during March, 1942. Consequently they can not determine a maximum price for wholesale sales of this whiskey pursuant to Section 3(a) of the General Maximum Price Regulation.

"The order establishes in addition to a wholesale price a retail price for sales by applicants prior to the effective date of Maximum Price Regulation No. 445.

No report has been filed by applicants under Section 3(a) of the General Maximum Price Regulation covering any of its sales of this whiskey at retail. In no event would a retail price of more than $50.02 be approved by this office.

"The maximum prices established were determined by following the formulas set forth in Maximum Price Regulation No. 445.

"Ben C. Duniway

"Acting Regional Administrator

"Issued and effective June 24, 1944."

2(g), and 202(a), 50 U.S.C.A.Appendix, §§ 902(a, c, d, g), 922. Whether or not this court has any jurisdiction to determine from the Act the Administrator's authority to issue a regulation or order in a particular case, the order here in question seems clearly authorized under the Act. If the Administrator has the right to sue under § 205(e) for a violation of § 1499.3(c) of the G.M.P.R., the authority to issue the order in question must be implied, otherwise his authority to sue for damages for price infractions would be utterly meaningless. Furthermore, specific authority is found in § 201(d). This section appears under Title II of the Act which is headed "Administration and Enforcement" and the section provides: "The Administrator may, from time to time, issue such regulations *and orders* as he may deem necessary or proper in order *to carry out the purposes and provisions of this Act."* [Emphasis supplied] The letter and spirit of the law lead us to the conclusion that the challenged order was purely procedural and was designed (within the powers of the Administrator) to enable the Administrator "to carry out the purposes and provisions of this act," and also to enable a court to properly calculate the amount of damages which might lawfully be assessed under the state of facts in this case.

■ Appellants object to the sufficiency of the evidence upon which the order was based, but it is well established that this court is without jurisdiction to consider this question. § 204(d) of the Act, 50 U.S.C.A.Appendix, § 924(d); Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892.

■ Under § 204(e) of the Act appellants were given an opportunity to apply for a stay in proceedings pending review of the validity of an order or regulation by the Emergency Court of Appeals. They did not apply for such a review of the order either during or after the time of the trial. The fact that the order has a retroactive effect does not necessarily make it invalid. Compare Paramino Lumber Co. v. Marshall, 309 U.S. 370, 60 S.Ct. 600, 84 L.Ed. 814; Milliken v. United States, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809; Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438, 134 A.L.R. 1155; United States v. Morgan, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211; Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528; Atlantic Coast Line R. R. Co. v. State of Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451; Speert v. Morgenthau, 73 App.D.C. 70, 116 F.2d 301; Landay v. United States, 6 Cir., 108. F.2d 698; Bowles v. Wheeler, 9 Cir., 152 F.2d 34, certiorari denied 326 U.S. 775, 66 S.Ct. 265; Womack v. Bowles, Em.App., 146 F.2d 497. No vested right of appellants was disturbed for "there is no such thing as a vested right to do wrong", Johannessen v. United States, 225 U.S. 227, 242, 32 S.Ct. 613, 617, 56 L.Ed. 1066; R. H. Stearns Co. of Boston, Mass. v. United States, 291 U.S. 54, 61, 54 S.Ct. 325, 78 L.Ed. 647.

Before the district court could lawfully enter a judgment based on or involving the amount of overcharges, it was necessary for the OPA to enter this order. It is not infrequent that a court of law or equity may find it necessary for an administrative body to issue an order concerning some phase of the case before the court may enter an appropriate judgment. See General American Tank Car Corp. v. El Dorado T. Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361; Addison v. Holly Hill Fruit Products, 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488, 153 A.L.R. 1007. We hold that insofar as this court has jurisdiction to determine the question, the order is a valid order, and that the trial court was correct in admitting the order in evidence.

Aside from the question above considered, appellants have raised several other issues which we now consider.

■ Appellants maintain that all their sales were to ultimate consumers, and that therefore the Administrator may not sue for treble damages under § 205(e) of the Act. It is clear from the evidence that the Martinis sold these goods at wholesale, that is, to buyers who used these commodities in the course of trade or business. Denny Martini testified that he knew the sales here involved were made to buyers in the retail liquor business or in the business of operating bars and taverns. The

purchasers were clearly buyers who used or consumed the commodities in the course of trade or business within the purview of § 205(e) of the Act. Cf. Bowles v. Trullinger, 9 Cir., 152 F.2d 191; Bowles v. Rogers, 7 Cir., 149 F.2d 1010; Speten v. Bowles, 8 Cir., 146 F.2d 602, certiorari denied 324 U.S. 877, 65 S.Ct. 1023, 89 L.Ed. 1429; Bowles v. Jones, 10 Cir., 151 F.2d 232; Bowles v. Seminole Rock & Sand Co., 5 Cir., 145 F.2d 482, reversed on other grounds, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700.

Appellants also contend that the action for damages under § 205(e) is an action which is tortious in nature and basing their argument upon this theory they maintain that they should be released from damages upon either of the two following grounds:

■ The first ground is that they should be released from liability because the Administrator, a few days before the trial, entered into compromises and releases for a consideration with certain other original defendants (see footnote 1), whom appellants claim were joint tort-feasors with appellants. Appellants, in an amended answer, set up these releases as affirmative defenses and renew the argument upon appeal that the release of one joint tort-feasor releases all. The evidence, however, does not show that the defendants so released acted in concert with appellants in making the sales here in question. The only evidence on the matter shows that one of these defendants (Schutz) sold the liquor in question to the Martinis. Appellee states that this sale between Schutz and the Martinis was in violation of the Price Control Act and that the release of Schutz involved his overcharges made at that sale, and did not involve later sales made by the Martinis. There is no evidence in the record to this effect. Neither is there any evidence to show that the released defendants acted with appellants in making these sales, other than the fact that Schutz made out invoices to some of the appellants' customers because Schutz had a wholesaler's permit required by § 3254 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 3254, and the Martinis did not. Appellants have failed to substantiate their affirmative defense. See Federal Rules of Civil Procedure, rule 8(c), 28 U.S.C.A. following section 723c; Ocean Accident & Guaranty Corp. v. Rubin, 9 Cir., 73 F.2d 157, 166, 96 A.L.R. 412. Whatever the nature of the action under § 205(e), from the evidence the released defendants could not be held jointly liable for the damages asked in this case, nor could they be termed joint tort-feasors with appellants.

■ The second ground under their tort argument is that they should be released from damages because the action against their agents, who made the sales in question for appellants, was dismissed by the lower court for lack of proof. (The agents were defendants Reed and Hoffman—footnote 1.) Appellants base their argument on the well recognized rule that a finding which exonerates an agent from liability for a tort necessarily exonerates the principal from responsibility for the agent's tort. But that rule of law is not applicable here. This action, whether tortious in nature or not, is based upon a statute (§ 205(e) which specifically states that the "seller" shall be liable for the overcharges. Neither the statute nor the facts show this to be a case of vicarious liability. Section 205(e) provides that "If any person selling a commodity violates a regulation [the person authorized to sue may] bring an action against the seller on account of the overcharge." The "seller" is individually liable for the overcharge which he collects. He cannot complain because a servant made the sales for him. Cf. Bowles v. Lee's Ice Cream, App.D.C., 148 F.2d 113; DiMelia v. Bowles, 1 Cir., 148 F.2d 725, certiorari denied 325 U.S. 886, 65 S.Ct. 1581, 89 L.Ed. 2000. Moreover, the evidence in this case is clear that appellants knew of the price being charged. If this were a tort, appellants participated in it and would not be merely vicariously liable. Since appellants are individually liable for damages here, they are not in a position to complain of the court's finding in regard to their agents. Compare, Bremner v. Hendrickson, 8 Cir., 31 F.2d 893; Madary v. City of Fresno, 20 Cal.App. 91, 128 P. 340.

■ Appellants finally claim that § 205 (e) is void for uncertainty. This court has

already decided the matter adversely to appellants' objections in Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566; and Augustine v. Bowles, 9 Cir., 149 F.2d 93.

The trial court properly disposed of the issues in this case and the judgment is affirmed.

DENMAN, Circuit Judge (dissenting).

This is an appeal from a judgment awarding treble damages against appellants in an action instituted by the Price Administrator in the district court pursuant to Section 205(e) of the Emergency Price Control Act, hereinafter called the Act.

The treble damages were awarded on the finding of the district court that Martini had sold Dunbar's whiskey in violation of Section 205(e) of the Act. That section provides for such a recovery from "any person selling a commodity" who "violates a regulation, order, or price schedule prescribing a maximum price or maximum prices," "on account of the overcharge."

For an "overcharge" there must be determined a prior maximum price which the actual sales price is over. Since the maximum price, if established at all, must be established under Regulation 1499.3(c), the primary question here is, Was there prescribed a maximum price by that regulation for the sale of the liquor?

It is apparent from the terms of the applicable regulation 1499.3(c) that it neither fixes a price nor states a formula for fixing a price as in the preceding regulation 1499.-3(a). What subsection (c) provides is an opportunity to Martini to seek not a price but a method or formula by which he himself can fix a price. The words of subsection (c) are that Martini shall seek "specific authorization from the Office of Price Administration" "in the form of an order prescribing a method of determining the maximum price," from which "a maximum price" should be determined by the seller.

It will be noted that Martini is not specifically required to seek such a formula. Assuming, arguendo, a violation of the Act by Martini in not seeking the price formula, this in no way aids us in answering the question Does the regulation provide for determining a maximum price for the purpose of computing the "overcharge" of Section 205(e) which the decision below adjudged? It is apparent from the language of subsection (c), supra, that it does not.

The Office of Price Administration recognized the defect in subsection (c) and on August 14, 1943, substituted for it in Price Regulation No. 445, § 5.4, 8 F.R. 11168, as to wholesale sales of whiskey, a formula for such sales. This formula was not made retroactive but applicable only to sales after August 31, 1943. All Martini's sales were before that date.

Hence we are not confronted with the question whether Section 205(e) under which the treble damages were awarded permits a recovery for sales in excess of a price *determined by a retroactively created and applied formula not in existence when the sales were made.*

Nor does Section 205(e) by its terms authorize a recovery for an overcharge in excess of a price fixed by the Office of Price Administration after a sale is made. All the Administrator's powers of price fixing are with reference to future sales. In my opinion there are no words in that section which the Emergency Court of Appeals would hold should be so construed. The general powers to issue regulations and orders are to make controls of price after their promulgation. Hence I dissent from the holding of the court that in any case Section 205(e) authorizes a recovery for an overcharge above a price so afterwards created.

However, that question is not before the court. There is here no retroactive price fixing by the Office of Price Administration. What it did, *after the complaint had been filed and over 10 months after the sales were made,* was to make a finding, cast in the form of an order, of which it is stated, not that the finding was retroactive but, that "(e) This order *shall become* effective upon its issuance." (Emphasis supplied.)

We are not called upon to decide what would be the effect of the order if it had read "This order shall become effective nunc pro tunc prior to Martini's sales." Calling the order "not phrased skilfully"

does not alter the plain words making it effective only from a date 10 months after the sales.

The finding on its face is cast as to the future action. It is

"(a) The maximum price which Denny Martini and Mildred Martini doing business. as Lakeside Cut-Rate Liquor Stores, hereafter referred to as applicants, *may charge* for sales at wholesale of Dunbar's Canadian Whiskey, 90.4 proof, made prior to August 31, 1943, shall be $37.61 per case of 12 fifths, f.o.b. applicants' warehouse." (Emphasis supplied.)

Recoveries under Section 205(e) cannot be had upon such a finding, assuming that the Office of Price Administration has what, in effect, is the power to create ex post facto civil liabilities.

The judgment of the district court should be reversed.

Rehearing denied; DENMAN, Circuit Judge, dissenting.