**PORTER, Price Administrator, v. REAL SILK HOSIERY MILLS.**

No. 963.

District Court, W. D. Kentucky, Louisville Division.

May 27, 1946.

Homer B. Parrent, of Louisville, Ky., for plaintiff.

Bullitt & Middleton, of Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

Plaintiff invokes the jurisdiction of this Court under the provisions of Subsection (c) of Section 925 of Title 50 U.S.C.A. Appendix, seeking an injunction during the pendency of the action and on final hearing a permanent injunction, both as provided in subsection (a) of that section.

The case is now before the Court upon plaintiff's motion for a temporary injunction.

The petition avers that in the plaintiff's judgment, the defendant "has engaged and is about to engage in acts and practices declared unlawful by section 4(a)" of the Act, 50 U.S.C.A.Appendix, § 904(a).

The unlawful acts and practices shown by the proof are requirements by defendant that purchasers buy other merchandise in connection with the sale to them by defendant of Nylon hosiery, in violation of Maximum Price Regulation 602 issued by Administrator November 15, 1945, and which by its terms became effective November 20, 1945.

Subsection (3) of Section 11 of the Regulation is here involved and is as follows:

"On and after November 20, 1945, regardless of any contract or obligation, no person shall: * * *

"(3) Require a purchaser to buy or agree to buy any hosiery or other article, service, package or wrapper in connection with a sale or delivery of Nylon hosiery."

The defendant is a member of the house-to-house selling industry. Its field sales forces are paid on a commission basis. The customer's original order is transmitted through the regional office to the home office to be filled and shipment is made from the home office directly to the customer.

Defendant has approximately 5000 solicitors or salesmen working under 7 regional sales managers and maintains 170 branch offices.

In support of his motion, the Administrator has submitted eighteen affidavits. Nine of the affidavits are from persons who either purchased or sought to purchase Nylon hose from various representatives of defendant in Louisville. Four affidavits refer to similar transactions in the Saint Louis area. Two affidavits relate to similar transactions in the State of Massachusetts and two relate to the defendant's office in Charleston, West Virginia. One affidavit from Miss Eloise Myers, a saleslady in the Saint Louis branch office, states that Mr. Fink, assistant sales manager at that branch, in the presence of "three or four other salesladies" stated that a minimum order of $9 was required of "other merchandise" before we could place an order with a customer for a pair of Nylons. She states that about two days later she received a card from Mr. Hruska, the manager of the Saint Louis branch, advising her she would be allowed to take an order for Nylons if she was able to get an order for "other merchandise" in the sum of $9.

Defendant's sales manager, Mr. Knox, testified upon the hearing and, asked to describe the function of the Branch Sales Managers, said in part: "He has the responsibility of appointing sales representatives in his territory, assigning the territory to the representative, receiving orders from those representatives, checking same to see that they comply with current regulations that are in effect * * *."

Defendant makes more of explanation than denials as to the acts and practices complained about by the Administrator. Mr. Fleming, Mr. Hruska, Mr. Fink and Mr. Knox all say in substance that the practice of requiring customers to buy "other merchandise" was not adopted from any or-

der from the home office but resulted from the effort of the regional and branch sales managers to reward the salesmen who devoted all or most of their time to the company's business as against the salesmen who devoted little of their time to selling. Mr. Hruska, Mr. Fink, and Mr. Fleming all say the allocation and distribution of Nylons was left to their judgment, and that "the making of a fair and equitable distribution" presented a difficult problem.

Mr. Fleming says that during the first week his office was given an allotment of Nylons; he divided the allotment among the more active representatives, permitting each to take orders for such specified number of pairs as he thought was fair; that thereafter "he developed a formula under which representatives would be authorized to enter orders for such number of pairs of Nylon hosiery as would be equal to the quotient of the representative's total dollar volume of orders for merchandise (other than Nylon hosiery) divided by six." This formula was followed up until April 1, 1946, except for one week during which period orders for "other merchandise" volume changed to $10 for each one pair of Nylon hosiery.

It is evident therefore that defendant violated the regulation, although it be admitted that the violations resulted, mainly, from the efforts of the regional and branch managers to reward the more industrious salesmen and in their effort to make a fair and equitable distribution of Nylon hosiery. "The owner or operator of a business cannot divest himself of responsibility for observing the rationing rules by any such simple expedient as turning the actual details of running the business over to a servant." Bowles, etc., v. Lee's Ice Cream, Inc., et al., App.D.C., 148 F.2d 113; Di Melia v. Bowles, etc., 1 Cir., 148 F.2d 725.

Defendant's counsel urge that the provision of price regulations should be strictly construed and refer to the case of M. Kraus & Bros., Inc., v. United States, 66 S.Ct. 705, 707. The Court said:

"The dividing line between unlawful evasion and lawful action cannot be left to conjecture. The elements of evasive conduct should be so clearly expressed by the Administrator that the ordinary person can know in advance how to avoid an unlawful course of action."

Maximum Price Regulation No. 269 regulating sales of poultry, involved in the Kraus case, made no reference to tying-agreements or combination sales. The Court held that the Administrator's failure to express adequately his intention to prohibit tying-agreements and combination sales did not prohibit the act or practice of requiring customers, in order to purchase a turkey, to purchase simultaneously gizzards, chicken feet or chicken skin.

The Regulation here involved is not so lacking. In addition to the excerpt from Maximum Price Regulation 602, Section 11 above quoted, subsection 6 of Section 11 of the Regulation prohibits the practice of making use of "tying-agreements and similar practices" as devices to evade or circumvent the maximum prices.

The Supreme Court in the Kraus case said:

"Hence one who willfully sells commodities at prices above the maximum in an evasive manner specified by the Administrator subjects oneself to criminal liability. These statutory warnings are clear and unambiguous. When incorporated with such definite and clear regulations and orders as the Administrator may promulgate, the provisions of the Act leave no doubt as to the conduct that will render one liable to criminal penalties."

### Findings of Fact

(1) This Court has jurisdiction of the parties and the subject matter.

(2) The defendant has engaged in acts and practices in violation of Maximum Price Regulation 602 issued by the Administrator effective November 20, 1946.

(3) The acts and practices constituting the violations are sales of Nylon hosiery to customers who were required to buy other merchandise in order to be permitted to purchase Nylon hosiery.

### Conclusion of Law

(1) The Administrator is entitled to the temporary injunction sought by his motion.

Plaintiff's motion for the temporary injunction is sustained.